## Margaret Mooy *vs.* Peter J. Gallagher *et al.*

### JUNE 3, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1) *Wills. Life Estate with Power of Disposal.*

Testatrix by will devised and bequeathed the residue of her estate to her husband "for his sole use and benefit during the term of his natural life, and upon the death of my said husband I direct that that which is remaining in possession of said (husband) be divided as follows:" After stating the method of division the will provided, "While having left my estate to my husband during his lifetime, it is my will that he be not restricted in any manner from using or disposing of all or any part of my real estate except the estate (describing it) nor all or any part of my personal property whether deposited in any bank or banks or otherwise invested."

*Held,* that the husband received a life estate with power of disposition, and therefore the limitations over were not void as repugnant to the estate in the life tenant.

*Held,* further, that the power of disposition by a conveyance *inter vivos* did not extend to a disposal by will.

TRESPASS AND EJECTMENT. Heard on agreed statement of facts.

PARKHURST, J. This is an action of trespass and ejectment brought by the plaintiffs to recover from the defendants, Gallagher and Davis, possession of a certain parcel of land in the city of Providence (hereinafter fully described).

To the declaration the defendants plead title in the defendant, Gallagher, and title as tenant in the defendant, Davis.

Whether the title is in the plaintiffs or the defendants will depend on the construction to be given to the wills of Mary Donnelly and John Donnelly, through whom all the parties to the suit make claim. Both of these wills have been duly proved. The agreed statement of facts eliminates all question of pleadings in the case and brings the question to the attention of this court for the construction of the two wills. The agreed statement of facts is as follows:

"In the above entitled case, it is agreed and stipulated that the following are facts:

"Mary Donnelly, late of the Town of East Providence, in said County of Providence, died on February 25, 1908, leaving a last will and testament (a copy whereof marked 'Exhibit A' is annexed hereto and made a part hereof), which was duly proved and approved by and before the Probate Court of said Town of East Providence on March 23, 1908, from which probate no appeal was taken.

"That Mary Donnelly left surviving her, her husband, John Donnelly, a daughter, the plaintiff, Margaret Mooy, and three grandchildren, the plaintiffs, Willimena Mooy, Henry L. Mooy and Mary A. Chace, formerly Mary Mooy, that last three being children of the said Margaret Mooy.

"That Mary Donnelly, at the time of her death, was seized in fee simple and possessed of a certain tract of land, with the buildings and other improvements thereon, and the appurtenances thereto, situated in the city of Providence, in said County of Providence, on the northwest corner of

Balch Street and Pacific Avenue, bounded and described as follows:

"Beginning at the southwest corner thereof at the point where the westerly line of Pacific Avenue intersects the northerly line of Balch Street; thence northerly bounding easterly on Pacific Avenue 80 feet; thence westerly 68.23 feet, more or less; thence southerly 80 feet to Balch Street; thence easterly bounding southerly on Balch Street 68.57 feet, more or less, to the point and place of beginning; containing by estimation 5,472 square feet, more or less; said tract of land is laid out and designated as lots 535 and 536 on assessors' plat No. 50, on record in the Assessors' Office, in said Providence, and also as lots 175 and 176 in section 0 on the Elmwood Nursery Plat No. 2, on record in the office of the Recorder of Deeds of said city of Providence.

"That said Mary Donnelly, in and by the second paragraph of her last will and testament, devised and bequeathed the rest and residue of her estate, real, personal and mixed, (said rest and residue including the above described tract of land), in the following manner:

"'Second: That the rest and residue of my estate, real, personal and mixed, that which I now possess as well that which I may subsequently acquire I leave to my husband, John Donnelly, for his sole use and benefit, during the term of his natural life, and upon the death of my said husband, John Donnelly, I direct that that which there is remaining in possession of said John Donnelly be divided as follows:

To Peter John Galligan, the house and lot now designated as No. 81 Pleasant View Avenue, Providence, Rhode Island.

To Mrs. Annie Galligan Commit, my niece, the sum of $100 (One hundred dollars).

To Daniel Lyons, my cousin, the sum of $100 (One hundred dollars).

To Roman Catholic Church of St. Brendan's, East Providence, the sum of $100 (One hundred dollars).

"'The rest and residue real, personal or mixed, I direct that it be divided as follows: One-half to Mrs. Margaret

Moy, and one-half equally between the children of said Margaret Moy, namely, Mary Moy, Willimena and Henry Moy.

"'After the death of my said husband, John Donnelly, I hereby nominate and appoint my daughter, Margaret Moy, executrix of this my last will and testament.

"'While having left my estate to my husband, John Donnelly, during his lifetime, it is my will that he be not restricted in any manner from using or disposing of all or any part of my real estate except the estate No. 81 Pleasant View Avenue, Providence, R. I., nor all or any part of my personal property whether deposited in any bank or banks or otherwise invested.'

"That said John Donnelly, during his lifetime, took and enjoyed the rents and profits of said parcels of land, and died on February 27, 1913, a resident of said town of East Providence, possessed of the same, never having disposed thereof during his lifetime.

"That said John Donnelly left a last will and testament (a copy whereof marked 'Exhibit B' is annexed hereto and made a part hereof), which was duly proved and approved by and before the Probate Court of said town of East Providence, on the 14th day of April, 1913, from which probate no appeal was taken.

"That in and by said last will and testament, said John Donnelly devised said tract of land above described to the defendant, Peter John Gallagher, alias John Peter Gallagher, alias John Doe, whose correct name is John Peter Galligan, as follows:

"'I give and devise unto said John Gallagher one two-tenement house now owned by me and situate at the corner of Pacific Avenue and Balch Street, in said city of Providence, to him his heirs and assigns forever.'

"That thereafter the said defendant, John P. Galligan, entered into possession of said described tract of land and is now in possession thereof, and claims that the above quoted clause of said will, of said John Donnelly, conveyed

to him the title of said described tract of land in fee simple, whereas the plaintiffs, said Margaret Mooy, Willimena Mooy, Henry L. Mooy, and Mary A. Chace claim that on the death of the said John Donnelly, the title to said above described tract of land passed to them, in fee simple, as tenants in common, under said will of said Mary Donnelly, in the following proportions:

One-half thereof to said Margaret Mooy.

One-sixth thereof to said Mary A. Chace.

One-sixth thereof to said Willimena Mooy.

One-sixth thereof to said Henry L. Mooy."

Thereafter, the case was certified to this court in accordance with Section 4 of Chapter 298 of the General Laws, 1909. By the agreed statement of facts, it appears that Mary Donnelly, of East Providence, died testate February 25th, 1908, leaving surviving her her husband, John Donnelly, a daughter, the plaintiff, Margaret Mooy, and three grandchildren, the plaintiffs, Willimena Mooy, Henry L. Mooy, and Mary A. Chace (formerly Mary Mooy), the last three being children of said Margaret Mooy.

That, at the time of her death, Mary Donnelly was seized of the premises in question; that, by the *second* paragraph of her will, she devised and bequeathed the rest and residue of her estate, real, personal and mixed, to her husband, John Donnelly, "for his sole use and benefit during the term of his natural life, and upon the death of my said husband, John Donnelly, I direct that that which there is remaining in possession of said John Donnelly be divided as follows:

"To Peter John Galligan, the house and lot now designated as No. 81 Pleasant View Avenue, Providence, Rhode Island.

"To Mrs. Annie Galligan Commit, my niece, the sum of $100 (One hundred dollars).

"To Daniel Lyons, my cousin, the sum of $100 (One hundred dollars).

"To Roman Catholic Church of St. Brendan's, East Providence, the sum of $100 (One hundred dollars).

"The rest and residue real, personal or mixed, I direct that it be divided as follows:—one-half to Mrs. Margaret Mooy, and one-half equally between the children of said Margaret Mooy, namely, Mary Mooy, Willimena and Henry Mooy."

The will then nominates and appoints the testatrix's said daughter, Margaret Mooy, executrix after the death of said John Donnelly and concludes as follows:

"While having left my estate to my husband, John Donnelly, during his lifetime, it is my will that he be not restricted in any manner from using or disposing of all or any part of my real estate except the estate No. 81 Pleasant View Avenue, Providence, R. I., nor all or any part of my personal property, whether deposited in any bank or banks or otherwise invested."

That John Donnelly died testate February 27th, 1913, possessed of the premises in question, never having disposed of them during his lifetime; that, by his will, he devised the premises in question as follows:

"I give and devise unto said John Gallagher one two-tenement house now owned by me and situate at the corner of Pacific Avenue and Balch Street, in said city of Providence, to him his heirs and assigns forever."

That thereafter the defendant, Gallagher, entered into possession of said premises and is now in possession, claiming the same under said clause of said will of said John Donnelly, while the plaintiffs claim that, upon the death of said John Donnelly, the title to said premises passed to them in fee simple, as tenants in common under the will of said Mary Donnelly.

The questions arising under the facts are as follows:

(1)     1. Was the estate given to John Donnelly by the will of Mary Donnelly an absolute estate in fee so that the limitations over were void:

2. Was such estate a life estate only, with a power of disposition:

3. If the second question is answered in the affirmative, could John Donnelly exercise such power of disposition by

will or was his exercise of such power limited to a conveyance *inter vivos.*

The rule that in the construction of a will the intention of the testator must govern where that intention can be legally carried out has been so often stated that no authority therefor need be cited.

An examination of the provisions of Mary Donnelly's will indicates clearly that her intention was to give her husband, John Donnelly, an estate for life in all of her property, real and personal, remaining after the payment of her debts and funeral expenses, "for his sole use and benefit;" that as to her real estate (with the exception of a certain piece of real estate) she gave him power to use or dispose of all or any part thereof during his lifetime; that she intended that he might, if he had need, completely exhaust the same during his lifetime, but that she also clearly intended, in the event that her husband failed, during his lifetime, to use or dispose of all of her real estate, that her daughter, Margaret Mooy, and her three grandchildren, Willimena, Henry and Mary Mooy, should each receive a portion of all that remained in his possession at the time of his death, because she provides, "and *upon the death* of my said husband, John Donnelly, *I direct that that which there is remaining in possession of said John Donnelly be divided*" among certain persons mentioned, who are the plaintiffs in this action.

The real estate in question was a portion of Mary Donnelly's estate that remained after the payment of her debts and funeral expenses and so passed to John Donnelly under Mary Donnelly's will and was used and enjoyed by him during his natural life; it was never disposed of by him during his life and upon his death it remained "in possession of said John Donnelly."

The testatrix's will exactly fits this situation, for it says: "I direct that that which there is remaining in possession of said John Donnelly be divided as follows," and then makes a devise to the defendant, Gallagher, three separate bequests of $100 each, and gives the rest and residue to these plaintiffs,

one-half to Margaret Mooy, and one-sixth each to Willimena Mooy, Henry Mooy and Mary (Mooy) Chace.

It is claimed on behalf of the plaintiffs and is not disputed by defendants that the estate given to John Donnelly by the will of Mary Donnelly was not an estate in fee, but a life estate with power of disposition.

Cases of this kind, viz.: a devise of a life estate with an absolute power of disposition and a remainder over have been passed upon by courts in many jurisdictions. The great weight of authority is to the effect that a life estate is not changed to a fee by the added power of disposal in the life tenant, but that the estate given the taker is a life estate with an added power of disposal. The life estate is regarded as property, the power of disposal as a mere authority which the tenant for life may use or not as he pleases.

In arriving at this conclusion, courts have recognized the rule that the intention of the testator must be upheld if possible. They have said that there is no way of doing this except by holding that a life estate is given with power in the life tenant to cut off the remaindermen and that such a construction gives life to the whole instrument. On the other hand, they have said that, if a fee is held to pass because of the added power of disposition, the intention of the testator is upset by the application of an arbitrary rule of law. See note to *Steiff* v. *Seibert et al.* (Ia. 1905), 6 L. R. A. (N. S.) 1186.

This point was decided in the case of *R. I. Hospital Trust Co.* v. *Commercial National Bank*, 14 R. I. 625, affirmed in *Tilton Petr.*, 21 R. I. 426; and is admitted by the defendant to be the settled law of this state, in accord with the great weight of authority. See, also, *Phillips* v. *Wood*, 16 R. I. 274.

It follows therefore that the limitations over are not void as being repugnant to the estate in the life tenant.

The only question which is really contested is whether John Donnelly could exercise his power of disposition by will, or was such power limited to a conveyance *inter vivos*.

Mary Donnelly left her estate to her husband for his life for *his* "sole use and benefit;" hence, a devise by him was neither for his use nor benefit. The testatrix apparently intended that her will, and not that of her husband, should control the destination of any of her property remaining in his possession at his death, and in similar cases the courts. have so held.

In *Garland* v. *Smith*, 164 Mo. 1, the court on p. 15, quoted 2 Washburn on Real Property (5th Ed.) Vol. 2, 707, with approval as follows: "When the mode of executing a power comes to be considered, it will be found, that, in order to the execution being valid, the law is exceedingly strict in requiring a precise compliance with the direction of the donor, as. expressed in his deed or will" and the court adds, "And particularly is this true as to a power to cut out remainder-men."

In 1 Jarman on Wills (6th Eng. Ed.) p. 791, it is said: "So a gift to A 'for her own absolute use and benefit and disposal' with a gift over of any part remaining 'undisposed of' at her death, gives A a life interest, with a power of disposition by act *inter vivos*, but not by will."

*In re Thomson's Estate, Herring* v. *Barrow*, L. R. 13 Ch. D. 144, a testator, by his will, gave realty and personalty to the widow "for the term of her natural life to be disposed of as she may think proper for her own use and benefit according to the nature and quality thereof" and "in the event of her decease, should there be anything remaining of the said property or any part thereof," he gave "said part or parts. thereof" to certain persons.

It was held that the widow took a life estate with an absolute power of disposition exercisable by her during her lifetime, but not by testamentary instrument. Vice Chancellor Hall said at p. 146: "We have got here a gift for life, and then superadded to the life interest we have the words. 'to be disposed of as she may think proper for her own use and benefit according to the nature and quality thereof.'" . . . "I think that those words confer a power and do not.

give property. That view reconciles the whole. The words
'for her natural life' are insensible unless, as regards prop-
erty, she was only to take a limited interest. The words 'sec-
ondly, in the event of her decease should there be anything
remaining of the said property or any part thereof,' draw a
line at the death of the lady, so that what is 'remaining'
at the moment of her death becomes at that time the subject
of the gift over and belongs to the residuary legatees:
'Remaining' is consistent with there being a power of dispo-
sition other than a testamentary power. When once you
arrive at the conclusion that it is power and not property
which is intended, you can give effect to the limited interest
for life, superadding a power of disposition not extending
to a testamentary instrument; and this seems to me the true
construction of this will."

On appeal, this decision was affirmed in *Herring* v. *Barrow*,
14 L. R. Ch. D. 263, James, L. J., saying at p. 264: "If there
is one thing clearer than another in the case it is that the
testator intended his own will, and not that of his wife, to
be that by which the destination of his property was to be
determined.

"At her decease, should there be anything remaining,
the testator gives it over. What remained was what she
was in enjoyment of at her death, and why should not the
gift have effect?"

See, also, *re Pounder*, 56 L. J. Ch. (N. S.) 113; *Doe* v.
*Glover*, 1 C. B. 448. In *re Pounder*, *supra*, it is said, at p.
115: "The intention was that such of the property as
remained in specie at the time of her death should pass—
not under the wife's will, but under the will and codicil of
the testator."

In *Ford* v. *Ticknor*, 169 Mass. 276, a husband who was
tenant in common of land with his wife gave her by will
his entire estate "to hold to her during her lifetime, with full
power to use and dispose of the same as she shall deem right
and proper." After her death, he gave, devised and
bequeathed "all the remainder of my said estate" to his son,

his heirs and assigns forever.   The court held that the power
of disposal in the wife did not extend to a disposal by will.
The court said, at p. 281, that the "dominant purpose is
to give the wife a life estate, with a remainder given by the
testator to his son, and the power of disposal is merely
incidental to the life estate to make it fully effectual, and
so that, if she deems best, her use of it during her life may
exhaust the full value of the property.   We regard the power
in the present case as one only to be exercised during the
active enjoyment of the life estate, and in aid of that
enjoyment."

In *Wooster* v. *Fitzgerald, et al*., 61 N. J. L. 368, a husband,
by his will, made the following provision for his wife:   "I
order and direct that all my estate, real, personal and mixed,
shall, during the life of my beloved wife, should she survive
me, pass into her hands, and be subject to her sole manage-
ment and control, to keep and use, or sell and dispose of
the same as she shall see fit.   From and after the death of
my wife all my estate, real, personal and mixed, which shall
then remain, I order and direct my executors to dispose of
as follows."   It was held that the wife's power of disposal
must be exercised *inter vivos* and that so much of the estate
as was undisposed of at the wife's death became subject to
gift over.   The court said, at p. 372:   "The power of disposal
it seems to me, is one which must be exercised *inter vivos*.
The provision of the husband's will, following the bequest to
the wife, 'from and after the death of my wife, all my estate
*which shall then remain* I order and direct my executors to
dispose of,' etc., draws the line at the wife's death, so that
what is remaining at that time becomes subject to the gift
over.   The plain intention of the testator is that if his wife
has not disposed of all his estate *during her lifetime*—if any
of it remains in her hands at her death—it shall go to the
persons designated in his will."

In *Keniston* v. *Mayhew*, 169 Mass. 166, the will of a testa-
trix gave her sister the remainder of her estate, real and
personal, for life, *"to be disposed of at her discretion,"* with

remainders over at her decease. *Held*, to create a power of disposal during life, but not by will. See, also, to the same effect: *Evans et al.* v. *Folks*, 135 Mo. 397; *Terry* v. *Wiggins*, 47 N. Y. 512, 517; *Gruenewald* v. *Neu*, 215 Ill. 132, 138; *Small* v. *Thompson*, 92 Me. 539.

In view of the above quoted cases, this court is of the opinion that the power of disposition given to John Donnelly could only be exercised by conveyance during his lifetime and not by will. We find that it was the plain intention of the testatrix that he should have such life estate in her property "for *his sole use and benefit;*" and the power of disposition while broad and general in terms, nevertheless was also intended *for his sole use and benefit;* and that it was also just as plainly the intention of the testatrix that whatever remained in his possession at his death should be divided between her daughter and·her daughter's children as above set forth; and that this latter provision limits the power of disposition so as to shut out disposition by will, as in the cases above cited. No cases are cited on behalf of defendant which in any way tend to disturb our conclusions above set forth. The case of *Burbank* v. *Sweeney*, 161 Mass. 490, (upon which defendant strongly relied) is very different in many of its aspects; there the testator after giving all his estate to his wife for life dealt with the remainder after her death, by making three specific devises and bequests to three legatees, leaving his wife to dispose of the rest of the estate "as she may deem expedient;" and if she should make no disposition then to his heirs at law. It plainly appeared that the testator had made such express bequests as he desired; that he wished and expected his wife to retain the homestead and property for her support during life; they had no children or lineal descendants, and there was no devise over of the remainder to any particular person. The whole argument of the case shows an entirely different state of affairs from what is revealed in the case at·bar, and in holding that the wife had power of disposal by will in no way militates against the cases above cited. The case of *Burbank* v.

*Sweeney, supra,* is expressly distinguished in *Ford* v. *Ticknor,* 169 Mass. 276, 280, above cited.

In the case of *Forsythe* v. *Forsythe,* 108 Pa. St. 129, there was no devise over of any remainder, and it was properly held that the life tenant under general power of disposal had a testamentary power. In *Wead* v. *Gray,* 78 Mo. 59, the devise was of an absolute estate in fee, and the limitation over was held void. In *Dillon* v. *Falloon,* 158 Pa. St. 468, there was an absolute power of testamentary disposition and no devise over. In *Cueman* v. *Broadnax,* 37 N. J. L. 508, there was a trust deed with general power of appointment and no limitation over. In *Fairman* v. *Beal,* 14 Ill. 244, there was a general power and no devise over. In *Kimball* v. *Sullivan,* 113 Mass. 345, the devise was of a fee, or if not, then there was a power of testamentary disposal plainly and necessarily implied from the language of the will.

After careful consideration of all the cases upon the briefs and of the language of the whole will, we are clearly of the opinion that John Donnelly had no power of disposition by his will, and that the estate described in the agreed statement of facts passed under the will of Mary Donnelly to the plaintiffs, as claimed by them.

The case is remitted to the Superior Court with direction to enter its judgment for the plaintiffs.

*Greenough, Easton & Cross, Harry P. Cross,* of counsel, for plaintiffs.

*John H. Flanagan,* for defendants.

---

LILLIE M. HOWARD, *et als.* FOR AN OPINION.

JUNE 22, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Wills. Remainders.*

Testamentary provision to widow of testator "her heirs and assigns forever all my real estate and personal property in trust—to hold said real estate and personal property and the rents, profits and income thereof for her own use
27

during her natural life, or so long as she shall remain my widow," and "upon her decease or marriage, to hold the same in trust for the support of my minor children—until such time as the youngest of minor children who shall live to attain the age of twenty-one years shall have attained that age and then to convey said estate in equal shares to my children then living and to the descendants of any of them that may have deceased."

*Held*, that the purpose was to give the widow the use of the trust estate during her natural life except in case of her remarriage, and if necessary the trust was to continue until the majority of the youngest child of testator.

*Held*, further, that the expression "*then* to convey said estate," referred to the happening of the event which was to mark the termination of the trust and not to the attaining of the age of twenty-one years by the youngest child.

*Held*, further, that the equitable remainders after the life estate of the widow were contingent and therefore a child who deceased in the lifetime of the widow and after the youngest child had attained its majority had no devisable interest in the estate.

PETITION under Gen. Laws, 1909, cap. 289, § 20, for an opinion.

BAKER, J.    This is a petition under Section 20 of Chapter 289 of the General Laws, brought originally in this court by parties having adversary interests, wherein the petitioners ask for an opinion declaratory of the rights of the parties in interest under the last will and testament of Samuel J. Howard, late of Providence, in this state, deceased.

Said Samuel J. Howard died on or about March 27, 1884, testate.    His last will and testament was duly admitted to probate by the municipal court of said Providence on April 29, 1884.    The controversy has arisen as to the construction to be given to the third clause of said will, which is as follows: "I give, devise and bequeath to my dearly beloved wife, Jane Elizabeth Howard, her heirs and assigns forever, all my real estate and personal property of which I shall die possessed, including my real estate and personal property which I may hereafter acquire, in trust nevertheless for my said wife to take possession and charge of said real estate and to collect the rents and profits thereof and to apply to keeping said real estate in good order and repair, and to the payment of the interest on any mortgage upon the same and

also to receive and collect of the Mutual Benefit Insurance Company of New Jersey, two life insurance policies for the sums of one thousand dollars each, upon my life, and to apply the amount thereof to the payment and reduction of the principal sum due upon any mortgage upon said real estate, or to use the same for other purposes in her discretion, and to hold said real estate and personal property and the rents, profits and income thereof for her own use during her natural life or so long as she shall remain my widow, and upon her decease or marriage to hold the same in trust for the support of my minor children, and to the payment of the principal sum due on said mortgage until such time as the youngest of minor children who shall live to attain the age of twenty-one years, shall have attained that age, and then to convey said estate in equal shares to my children then living and to the descendants of any of them that may have deceased, such descendant to take *per stirpes* and not *per capita*, to have and to hold the same to them and their heirs and assigns forever."

His widow, Jane Elizabeth Howard, survived him and died April 19, 1913. Of course at the time of her death the youngest minor child of the testator to attain the age of twenty-one years had long before attained that age inasmuch as the widow survived the testator more than twenty-nine years. The testator left several children, among them a son, Samuel J. Howard, who died October 20th, 1905, testate, leaving him surviving a widow, Lillian E. Howard, and a son, Charles D. Howard, by a former marriage.

The fifth clause of the will of the younger Samuel J. Howard is as follows: "Fifth: I give, devise and bequeath to my wife Lillian E. Howard, her heirs and assigns forever all the rest, residue and remainder of my estate of every name and nature, real, personal and mixed, including all which I inherited from my father or which was devised to me by his will, as well as all which I may acquire subsequent to the date of this will and of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease."

Eight persons signed the petition, including said Lillian E. Howard and said Charles D. Howard and the petitioners say that they are all of full age and that they are now the only persons interested in the proper construction of said will of Samuel J. Howard, Sr., and in the property given and devised thereby. The interests of said Lillian E. Howard and Charles D. Howard are represented as adverse and they are the only ones who have appeared by counsel and submitted briefs.

(1)     While the will of Samuel J. Howard, Sr., is somewhat inartificial in construction and also somewhat careless in the matter of verbal expression, the general scheme of the testator in the disposition of his property is plain. After directing payment of his just debts and funeral expenses and bequeathing to his wife absolutely his household furniture and all goods and supplies on hand at the time of his death, he gives, devises and bequeaths to her "her heirs and assigns forever all my real estate and personal property" . . . "to hold said real estate and personal property and the rents, profits and income thereof for her own use during her natural life or so long as she shall remain my widow." Apparently his dominant purpose is to give her the sole use and benefit of the entire trust estate during her natural life unless by her own act she deprives herself thereof by remarrying. The trust therefore must, at least, continue and the trust estate remain undivided until her death or remarriage. But the testator apparently saw the possibility of the happening of one of these events before the youngest of his minor children became twenty-one years of age and, desiring to perpetuate the trust in such case until all of his children should be of age, he further provides (referring to his wife) that "upon her decease or remarriage to hold the same in trust for the support of my minor children and to the payment of the principal sum on said mortgage until such time as the youngest of minor children who shall live to attain the age of twenty-one years shall have attained that age and then to convey said estate in equal shares to my children then

living and to the descendants of any of them that may have deceased." Grammatically this language provides that the testator's wife is still to hold the property in trust after marriage or death. That, of course, would be impossible after death and what was his real intention upon the happening of either of the events named is shown by the provision at the end of paragraph three of his will where he authorizes the "Court of Probate of the City of Providence upon the decease or marriage of my said wife to appoint a new trustee under this will which new trustee when so appointed shall have and exercise all the powers and be subject to all the duties and liabilities of the original trustee herein named." But the words, "upon her decease or marriage to hold the same in trust," in this connection do imply that if necessary the trust was to continue until the youngest of the testator's children who should attain the age of twenty-one years should reach that age. It is clear that the intention was that the trust should continue until the testator's widow should remarry or die and until the youngest of his minor children should become twenty-one years old. Whichever one of these three events should happen last, thereupon the trust was to terminate and the time for dividing and distributing the trust estate would arrive.

It is urged in behalf of Lillian E. Howard that the word *then* in the expression "then to convey said estate" refers to the time when the youngest of said minor children "who shall live to attain the age of twenty-one years shall have attained that age." Grammatically this is undoubtedly correct, but it is to be borne in mind that the testator was providing for the contingency of his wife's dying or remarrying while some of his children were minors, and fixed the date of the reaching the age of twenty-one years by his youngest child attaining that age for the division of the trust estate only in the happening of said contingency, which, however, did not happen. The will does not expressly provide for the distribution of the trust estate at the death of the widow in case at that time all of their minor children

shall have attained the age of twenty-one years, but, how-
ever, the object in creating the trust would then be fully
accomplished, aside from the division of the estate, inasmuch
as the widow had received "the rents, profits and income
thereof for her own use during her natural life" and inas-
much as the continuance of the trust "for the support of
my (his) minor children" would not be necessary, since
such children had ceased to be minors.

In the brief for Lillian E. Howard it is stated that the
youngest child of Samuel J. Howard, Sr., had attained the
age of twenty-one years before July 15, 1905, when Samuel
J. Howard, Jr., made his will.    To hold that on that date the
time had arrived for the trustee "then to convey said estate
in equal shares to my children then living," would have
deprived the testator's widow of the use of his estate for
the last eight years of her life notwithstanding the gift
to her for life.    It is obvious that the intention of the
testator as expressed in his will can only be carried out by
interpreting the words "then to convey" as referring to the
happening of the event which was to mark the termination of
the trust.    Had the widow died or remarried during the
minority of the children then the arrival of the youngest
child of the testator at the age of twenty-one years would
have been such event, but as the testator's widow did not
remarry and as all of his children attained their majority
while she was alive, then the happening of her death on April
19, 1913, was the event which terminated the trust and
fixed the time for the conveyance and distribution of the trust
estate.

The question remains as to whether said Samuel J.
Howard, Jr., took a devisable interest in an equal share of
the trust estate under his father's will which would pass
under his own will to his widow, Lillian E. Howard, or his
son, Charles D. Howard, took said share under his grand-
father's will as his father's only descendant.

The legal estate in fee was in the testator's widow.    She
also had an equitable estate for life or widowhood.    Were

the equitable remainders over vested or contingent? In *Melcher, Petitioner*, 24 R. I. 575, 578, this court said: "Cases upon the construction of wills and upon vested and contingent remainders have been too numerous and conflicting for an attempt to review or to reconcile them. Indeed, the task would be well-nigh impossible." Perhaps in the present case the question is not of paramount importance as the practical result would be the same, if the interest of Samuel J. Howard, Jr., under his father's will was contingent upon his surviving his mother or, if vested, it was subject to be divested by his death during his mother's lifetime. It is true that the law favors the vesting of estates, but upon this point, as all others, the intention of the testator if ascertained must prevail.

We are of the opinion that these equitable remainders were contingent. There are several Rhode Island cases supporting this view.

In *Brown* v. *Williams*, 5 R. I. 309, the testator devised lands to trustees for the use of his daughter, Mary Dockray, for life with a remainder in fee to her lawful issue, and in case she died leaving no such issue "to the children of my daughter, Ann Brown, not only those that are now born, but those that may be born, to be equally divided between them, share and share alike, or to the issue of deceased children, as shall be living at the time of my said daughter, Mary Dockray's decease, the children of a deceased child to take the same share their parent, if living, would have taken." It was held that the children of Ann Brown, who survived Mary Dockray, were alone entitled to participate in the contingent remainder in said lands and hence that nothing passed in the lands under the will of one of them who died during the life of Mary Dockray, though she subsequently died without issue. On page 316, Ames, C. J., says: "If the *contingency* is to decide who is to be the object of the contingent limitation, as the person, or of the persons, to or amongst whom the contingent or future interest is directed, as it cannot be determined in whom the interest is,

until the contingency happens, no one can claim, before the contingency decides the matter, that any interest is vested in him to descend from, and hence to be transferred or devised by him;" and also on the next page (as follows): "If, therefore, we construe the words 'as shall be living at the time of my said daughter, Mary Dockray's decease, as grammatically applicable only to the issue of deceased children, how, we may ask, are *their* interests under this will to be preserved, since, then, we must hold, that an interest in these shares so vested in the children, that they might, pending the life estate of Mary Dockray, alienate them from their issue? The issue of children, living at the determination of the life estate, were certainly to take the share which their parents, if living, would have taken, as purchasers; and such an interest in them seems to us utterly incompatible with a right on the part of the parent to alienate his share, which would follow the vesting of any interest in the children pending the life estate of Mary. The issue were to take the shares which their parents 'if living, *would have taken;*' which strongly implies, that their parents were to take nothing, unless living at the death of Mary Dockray."

In *Bailey* v. *Hoppin*, 12 R. I. 560, there was a conveyance in trust with certain powers and upon certain trusts and in further trust on the decease of the grantor and his wife to convey the trust estate to such of the children of the grantor and his wife "who shall be living at the decease of the survivor of them, and to such issue, then living, of any one or more of the children of the grantor and said wife, who may then be deceased, their respective heirs and assigns, in equal shares, as and when said children, and issue shall respectively attain the age of twenty-one years, or die under that age, in a course of distribution, so that the issue of any deceased child may take, by way of substitution, the share only which the parent would have taken if living." The grantor had six children when the trust deed was executed. They all survived their parents and were all over twenty-one when the surviving parent died, which was the mother. During her

lifetime a son, Arnold Burges, gave a quitclaim deed of all his right, title and interest in the trust estate. Durfee, C. J., on page 567, says: "The first question which we will consider is, were the equitable remainders created by the trust deed vested or contingent? We think they were clearly contingent. They were limited, after the death of the grantor and his wife, not to their six children, but only to such of them as should then be living, and to the issue of such of them as should then be dead. It was uncertain at the creation of the trust, and it continued to be uncertain during the life of the surviving parent, who, if any, of the children would survive. Arnold Burges might or might not survive; but unless he did survive he would not be one of the persons to whom the equitable estate in remainder was limited. It was uncertain not only *when* he would be entitled to the sixth of the estate in *possession*, but *whether* he would ever be entitled to it, either in possession or *right*. We think, therefore, that the equitable remainders were contingent, and continued so until the death of Mrs. Burges, the equitable donees in remainder being then first ascertained."

In *Melcher, Petitioner, supra,* there was a testamentary devise to a wife for life and then "upon the decease of my said wife, the property by this and the preceding clause devised shall belong to my children, the descendants of any deceased child to take the share their parent would have taken if living." Testator died leaving a widow and three children. One of these children, Henry L. Stevens, died without issue before the termination of his mother's life estate, leaving a will disposing of his property. Stiness, C. J., on page 577, says: "The first inquiry, therefore, is the legal effect of the terms of the will. This involves three things: the time of taking, the persons to receive, and the quantity of the estate devised.

"Upon these points we think that the will is explicit. The time when the interests of the children or their descendants were to attach was 'upon the decease of my said wife.' That is the focal point. That was the time when the interests were to be determined.

"The persons who were then to receive the property were the living children or their descendants, *per stirpes.* The persons, therefore, who were to take were uncertain. It could not be known which, if any, of them would be alive to take an interest in the estate. If one or more of the children did not live, the estate was not to go to their heirs, as heirs, nor to their assigns, but to certain described persons. For example, had Henry L. Stevens left children, a third interest would have gone to them, not as heirs of their father, but as devisees under the will." See, also, *Ross* v. *Nettleton,* 24 R. I. 124; *Rhode Island Hospital Trust Co.* v. *Harris,* 20 R. I. 408; *Matter of Baer,* 147 N. Y. 348; *Dickerson* v. *Sheeley,* 141 N. Y. Supp. 35; *Olney* v. *Hull,* 21 Pick. (Mass.) 311; *Thomson* v. *Ludington,* 104 Mass. 194.

We think that the cases quoted are decisive of the case at bar, and that the children of the testator were to take no part of the corpus of the trust estate, unless living when the trust terminated, which was upon the death of their mother.

We are of the opinion, therefore: (1) that by reason of the death of Samuel J. Howard, Jr., before his mother, he had at the time of his death, no devisable interest in the estate of his father and that in consequence his widow, Lillian E. Howard took no part of said estate under her husband's will; (2) that Charles D. Howard took under his grandfather's will as the sole descendant of his father the equal share of said estate which his father would have taken had he survived his mother.

A declaratory decree in accordance with this opinion may be presented for approval on June 29, 1914, at 10 o'clock A. M.

*Mitchell & Edwards,* for Charles D. Howard.
*John B. Edwards,* of counsel.
*Henry Marsh, Jr.,* for Lillian E. Howard.

A. Frank Mowry *vs.* Ellenor Taft *et al.*

JUNE 18, 1914.

Present: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Wills.  Vested Interests.  Gifts to a Class.*

Under a will bequeathing the income and profit of a fund for life and "upon the decease of the said X, I give and bequeath *the same*" to the six children of X, (naming them) "equally to them their heirs and assigns forever, share and share alike."

*Held*, that the intent of testator was to give X the income of the fund for life and the fund itself to the children upon her decease.

*Held*, further, that the children received a vested interest.

*Held*, further, that the gift to the children was not a gift to a class, but to the individuals distributively.

*(2)  Trusts.  Equitable Conversion.*

Under a will which bequeathed the income of a fund for life with remainder over, but which made no provision for a trustee, the executor invested the fund and upon his decease a trustee was appointed who invested a portion of the fund in a mortgage upon real estate.

*Held*, that the character of the portion of the fund so invested was not changed as it amounted to an equitable conversion of the personalty into realty.

*(3)  Descent and Distribution.*

Where testator bequeathed to X the income of a fund for life, and after her death, provided that it should be divided equally among her six children, a surviving husband of a deceased child is not entitled to share with the surviving children in that part of the estate which came to them by inheritance from other children dying intestate and unmarried.

Bill for Construction of will certified under Gen. Laws, Cap. 289, § 35.

Johnson, C. J.   This is a bill in equity, for the construction of the will of Cyrus Logee, of Burrillville, in the county of Providence and State of Rhode Island, brought by A. Frank Mowry, of the city of Providence, in said county of Providence, against Ellenor Taft, of the town of Northbridge, in the State of Massachusetts, Duty E. Caswell, of the town of Douglas, in the State of Massachusetts, Flora B. Robbins, a person of unsound mind, of the city of Worcester, in the State of Massachusetts, and James Daniels, guardian of said Flora B. Robbins, of the town of Millbury, in the State of Massachusetts, Vernon L. Robbins, of the town of East Thompson, in the State of Connecticut, William Olney, of the town of

Burrillville, in the State of Rhode Island, Eugene N. Granger, and wife, Ethel Granger, of the town of Burrillville, in said State of Rhode Island.

Said bill has been amended and as amended shows:

That Cyrus Logee, late of the town of Burrillville, in said county of Providence and State of Rhode Island, died on the 24th day of November, 1887, leaving a last will and testament bearing date November 19, 1887, and which will was duly probated in the probate court of said Burrillville, on the 10th day of December, 1887, a copy whereof is annexed to said bill.

That David Mathewson, of said Burrillville, was named as executor in said will; that he duly qualified and performed the duties as such executor.

That said will made no provision for the appointment of a trustee under said first clause other than the appointment of said David Mathewson as executor of said will; that said David Mathewson deposited the sum of four thousand dollars as a trust fund under said first clause of said will, in the participation account of the Industrial Trust Company, of the city of Providence, as executor, and paid out the income and profit of the said sum of four thousand dollars from time to time, to said Elizabeth R. Caswell, until the death of said David Mathewson, which occurred May 14, 1896.

That Oliver A. Inman, of said Burrillville, was by decree of the appellate division of the Supreme Court of the State of Rhode Island, entered on the tenth day of April, 1897, appointed trustee under the terms of the first clause of said will, to succeed said David Mathewson, deceased; that said Oliver A. Inman duly qualified as such trustee, and drew two thousand dollars out of said participation account in said Industrial Trust Company, and invested the same in a mortgage in his own name, but not as trustee, on real estate situated in said town of Burrillville, and belonging to one James Donnelly, of said Burrillville, which said mortgage is annexed and marked "Exhibit B;" that said Oliver A. Inman paid out the income and profit arising from the said

mortgage instrument, and the income and profit of the sum of two thousand dollars remaining in said Industrial Trust Company from time to time, to said Elizabeth R. Caswell, until his death which occurred on the second day of March, 1904.

That the complainant, said A. Frank Mowry, was by decree of said appellate division of the Supreme Court, entered on the twenty-fifth day of October, 1904, appointed trustee under the terms of said first clause of said will, to succeed said Oliver A. Inman, deceased; that the complainant duly qualified as such trustee and has continued to act in that capacity ever since.

That William A. Inman, of said Burrillville, executor of the last will of said Oliver A. Inman, deceased, duly transferred said mortgage taken in the name of said Oliver A. Inman, deceased, with the note thereby secured, to the complainant in his capacity as said trustee, which said transfer of said mortgage is annexed and marked "Exhibit C."

That the terms and conditions of said mortgage being broken, the complainant in order to prevent great loss in said mortgage investment, which to him appeared certain at the time if he instituted foreclosure proceedings, and in order to enhance the value of the estate of which he was trustee, took a conveyance of the said mortgaged premises to himself as trustee of the estate of said Cyrus Logee, deceased, from Mary E. Kelton, widow, of said Providence, sole devisee of said James Donnelly, late of said Burrillville, deceased, a copy of which deed of conveyance is annexed, and marked "Exhibit D."

That said trust estate now consists of said real estate conveyed by the aforesaid deed and the sum of $1,818.07, now in said participation account in said Industrial Trust Company, in said Providence, the sum of $181.93 having been paid out of said sum by order of court for legal expenses, and that the complainant, as said trustee, has paid out the income and profit of the fund in said Industrial Trust Company, and of said mortgage investment, and the income and profit of said real estate from time to time to said Elizabeth

R. Caswell, the holder of said life estate in said trust, until her death, which occurred at Northbridge, in the State of Massachusetts, on April 15, 1913.

That of the persons mentioned in the said first clause of said will as taking an interest in said trust estate, upon the death of said Elizabeth R. Caswell, the following are now living and have been made parties respondent to this bill, namely, Ellenor Taft, Flora B. Caswell, now Flora B. Robbins, and Duty E. Caswell; that said Elizabeth H. Caswell, died intestate and unmarried on the          day of 1888, leaving as her only heir at law, her father, John W. Caswell; that said Addie E. Caswell married one Vernon L. Robbins, and died on the 22nd day of February, 1892, intestate and without issue, and that her husband, Vernon L. Robbins, who has been made a respondent in this bill, and the said Ellenor Taft, Flora B. Robbins and Duty E. Caswell, are the heirs at law of the said Addie E. Caswell Robbins; that the said John W. Caswell died May 12, 1899, intestate, leaving a widow, Elizabeth R. Caswell, and as his only heirs at law, said Ellenor Taft, Flora B. Robbins, Duty E. Caswell and Myrtis M. Caswell; that the said Myrtis M. Caswell died May 12, 1905, intestate and unmarried, and leaving as her only heirs at law, Elizabeth R. Caswell, her mother, and the said Ellenor Taft, Flora B. Robbins and Duty E. Caswell, and that the said Elizabeth R. Caswell died (as aforesaid) April 15, 1913, leaving as her only heirs at law said Ellenor Taft, Flora B. Robbins and Duty E. Caswell.

The bill further sets out the devise and bequest by the testator by the fifth clause of said will of the residue of his estate to his sister, Lucretia E. Olney, of said Burrillville, and her heirs and assigns forever; the death of said Lucretia E. Olney on June 3, 1903, leaving a will in which her daughter, Ethel Olney, now Ethel Granger, wife of Eugene N. Granger, of said Burrillville, was made the sole beneficiary, subject to the payment of the sum of one hundred dollars to William Olney, husband of said Lucretia E. Olney, deceased, and that said Ethel Granger, Eugene N. Granger, and William Olney

are now living and have been made parties respondent to the bill.

The bill then states the claims made by the several respondents, and says: "That various questions have thus arisen relative to the construction, validity and legal effect of certain of the bequests, devises, and provisions contained in said will of Cyrus Logee, deceased," and the bill propounds certain questions which will be quoted later.

Service appears to have been made upon all the respondents named in the bill. Answers have been filed by Ellenor Taft, Duty E. Caswell, Vernon L. Robbins, and by James Daniels, guardian, and Percy Butterfield, guardian *ad litem* of Flora B. Robbins, alleged in the bill to be a person of unsound mind. William Olney, Eugene N. Granger and Ethel Granger have not answered, and the bill has been by decree taken as confessed against them.

The first question asked by the bill is: "*a.* Whether the bequest made to Ellenor Taft, Elizabeth H. Caswell, Flora B. Caswell, Duty E. Caswell, Addie E. Caswell, and Myrtis M. Caswell, by Cyrus Logee, in the first clause of said will, to take effect upon the death of Elizabeth R. Caswell, conveyed the income and profit of said four thousand dollars, for and during their respective lives, or an absolute estate in fee simple in said sum of four thousand dollars?"

The first clause of said will reads: "First. I give and bequeath unto my sister Elizabeth R. Caswell, wife of John Caswell, the income and profit of four thousand dollars for and during her natural life, and upon the decease of the said Elizabeth R. Caswell, I give and bequeath the same to Ellenor Taft, Elizabeth H. Caswell, Flora B. Caswell, Duty E. Caswell, Addie E. Caswell and Myrtis M. Caswell, children of Elizabeth R. Caswell, equally to them, their heirs and assigns forever, share and share alike."

The language of this clause clearly indicates the intention of the testator to give to his sister the income and profit of the fund for life, and to her children named therein, the fund itself upon her decease "equally to them, their heirs

and assigns forever, share and share alike." We cannot draw from the mere use of the word "same" the inference that he intended to create another life interest, and allow the corpus of the fund to fall into the residue, in view of his use of the very words proper for the designation of a gift in fee "to them, their heirs and assigns forever." In the gift to his sister he used the words proper to indicate a gift for life, and it is natural to suppose that if he had intended the gift to the children to be simply the income and profit for life, he would have used the words proper to indicate such an intention.

The second question asked by the bill is: "*b*. If the bequest to said Ellenor Taft, Elizabeth H. Caswell, Flora B. Caswell, Duty E. Caswell, Addie E. Caswell and Myrtis M. Caswell, under said first clause of said will is that of a life interest in said fund, then do said Ellenor Taft, Flora B. Robbins and Duty E. Caswell, take the income and profit of the whole of said trust estate, share and share alike, and to whom would the corpus of said trust estate pass upon the termination of the respective life estates of said Ellenor Taft, Flora B. Robbins and Duty E. Caswell?"

Our conclusion upon the first request renders the consideration of this question unnecessary.

The third and fourth questions asked by the bill are:

"*c*. If the bequest to said Ellenor Taft, Elizabeth H. Caswell, Flora B. Caswell, Duty E. Caswell, Addie E. Caswell, and Myrtis M. Caswell, under said first clause was an absolute estate in fee simple, subject to the life estate in said Elizabeth R. Caswell, do said Ellenor Taft, Flora B. Robbins and Duty E. Caswell, take the whole of said trust estate, or has said Vernon L. Robbins an interest therein?

"*d*. Whether or not the whole of said estate shall be treated as personalty under the first clause of said will?"

These last two questions will be considered together. Under said first clause of said will said children of Elizabeth R. Caswell received a vested interest. "A bequest after the death of a particular person, where an antecedent interest is given in the same will, is generally held not to denote a con-

dition that the legatee shall survive such person, nor to define when the legacy shall vest, but only to mark the time when the gift shall take effect in possession, that possession being deferred merely on account of the life interest limited to the person on whose death the gift is to take effect." *Chafee v. Maker*, 17 R. I. 739.

See, also, *Staples* v. *D'Wolf*, 8 R. I. 74; *Rogers* v. *Rogers,* 11 R. I. 38; *Pond* v. *Allen*, 15 R. I. 171; *Kenyon, Pet'r.,* 17 R. I. 149; *Ross* v. *Nettleton*, 24 R. I. 124; *Sherman* v. *Baker*, 20 R. I. 446, and cases quoted in the recent case of *Hazard* v. *Stephens*, 36 R. I. 96.

It is also apparent that the gift to the children of Elizabeth R. Caswell was not a gift to a class, but to the individuals distributively. There is no uncertainty as to the number of persons who are to take, or as to the amount of their shares. "Where, at the time, of making the gift, the number of beneficiaries is certain and the share each is to receive is also certain, and in no way dependent for its amount upon the number who shall survive, it is not a gift to a class, but to the individuals distributively, and this is generally held to be the case where the beneficiaries are named and their shares are certain." Cyc., Vol. 40, pp. 1473, 1475; *Hazard* v. *Stephens*, 36 R. I. 96. The interest of Addie E. Caswell was therefore a vested interest, not subject to survivorship.

(2) The will makes no provision for a trustee. The executor, however, properly invested the sum of four thousand dollars, bequeathed by the first clause of said will, from which during the lifetime of the executor the income and profits were paid to the life tenant, and upon the decease of the executor the appellate division of the Supreme Court appointed a trustee. The trustee invested one-half of this fund in a mortgage. This, however, did not change its character. Whether at common law the trustee is to be considered as having the title to the mortgaged property, or whether he is to be regarded as holding merely an equitable interest, is, we think, immaterial. As stated in the bill, the trustee holds the estate in fee simple by release from the mortgagor, but in any event

it is simply an equitable conversion of the personalty into realty. "An interest in real estate bought by an administrator to save a debt due the estate is to be treated as personalty, and not as realty in making distribution of the estate." 9 Cyc., p. 830. "The rule is established that where land is converted into personalty by will, deed or other instrument, the share of a feme covert in the proceeds belongs to her husband as other personalty." 9 Cyc., p. 852, and cases cited.

We do not understand that there is any distinction in the equitable rule between the coverting of real estate into personalty and personalty into realty.

As said trust estate is to be treated as personalty, and Addie E. Caswell Robbins had a vested interest therein at the time of her decease, to which her husband, Vernon L. Robbins, is now entitled, it is clear that he takes a one-sixth interest in said trust fund. He is not entitled to share in the interests vested in Elizabeth H. Caswell and Myrtis M. Caswell, deceased. The interest of Elizabeth H. Caswell passed to her father, John W. Caswell, as her only heir at law and he having survived his daughter, Addie E. Caswell, who died without issue, his interest passed to his wife, Elizabeth R. Caswell, as a distributee and his children then living, namely, Ellenor Taft, Flora B. Robbins, Duty E. Caswell and Myrtis M. Caswell, as his heirs at law. The interest of Myrtis M. Caswell passed to her mother, Elizabeth R. Caswell, and to her brother and sisters then living, namely, Elizabeth H. Caswell, Ellenor Taft, Flora B. Robbins and Duty E. Caswell and the interest of Elizabeth R. Caswell in the corpus of said fund passed upon her death to her three surviving children, Ellenor Taft, Flora B. Robbins and Duty E. Caswell.

Chapter 316, Section 9, General Laws, 1909, provides: "The surplus of any chattels or personal estate of a deceased person, not bequeathed, after the payment of his just debts, funeral charges, and expenses of settling his estate, shall be distributed by order of the probate court which shall have granted administration in manner following:

"FIRST. One-half part thereof to the widow of the deceased forever, if the intestate die without issue.

"SECOND. One-third part thereof to the widow of the deceased forever, if the intestate die leaving issue.

"THIRD. The residue shall be distributed among the heirs of the intestate in the same manner real estates descend and pass by this chapter, but without having any respect to the blood of the person from whom such personal estate came or descended."

Section 1 of Chapter 316 of the General Laws, in force at the deaths of the several Caswell children and of their father, John W. Caswell, provides that "Whenever any person having title to any real estate of inheritance shall die intestate as to such estate, it shall descend and pass, excepting as provided in section six, in equal portions to his kindred, in the following course:

"FIRST. To his children or their descendants, if any there be.

"SECOND. If there be no children nor their descendants, then to the father of such intestate.

"THIRD. If there be no father, then to the mother, brothers, and sisters of such intestate, and their descendants, or such of them as there be."

Had Addie E. Caswell Robbins died possessed of real estate it would have passed to her father and only the entire absence of paternal and maternal kindred would permit her husband to receive or inherit the same.

Vernon L. Robbins therefore under the same canons of descent, a distributee of his deceased wife's personal estate, is not entitled to share with said Ellenor Taft, Flora B. Robbins and Duty E. Caswell in that portion of the trust estate which came to them by inheritance directly from their sisters, Elizabeth H. Caswell and Myrtis M. Caswell, or through their parents, John W. Caswell and Elizabeth R. Caswell.

Vernon L. Robbins is not of the "kindred" or next of kin of his deceased wife and so cannot take in this respect under the statute. He is entitled to her intestate personalty by reason of Section 10, Chap. 312, Gen. Laws, 1909.

We therefore answer the questions propounded by the bill as follows:

"a." The bequest to Ellenor Taft, Elizabeth H. Caswell, Flora B. Caswell, Duty E. Caswell, Addie E. Caswell and Myrtis M. Caswell, in the first clause of said will, was, subject to the life estate of Elizabeth R. Caswell, a gift of an absolute estate in fee simple in said fund of four thousand dollars.

"b." The answer to the first request renders an answer to the second request unnecessary.

"c" and "d." Ellenor Taft, Flora B. Robbins and Duty E. Caswell do not take the whole of said trust estate under the first clause of said will, but take collectively five-sixths thereof, each taking five-eighteenths, and said Vernon L. Robbins, husband of Addie E. Robbins, deceased, takes one-sixth thereof.

*John P. Fox,* for complainant.

*Edward C. Stiness, Frederick W. O'Connell,* for respondent, Vernon L. Robbins.

*Luke Kavanagh,* for respondents, Ellenor Taft, Duty E. Caswell, Flora B. Robbins.