## W. K. GIBSON v. ALLEN B. GIBSON et al., Appellants.

### Division Two, February 6, 1912.

WILL: Construction: Intention of Testator: Life Estate with Power of Disposal: Trust. John B. Gibson's will read: "I will and bequeath to my wife ·Sarah Jane Gibson all of my property, real, personal and mixed . . . with the power to sell, control, manage and dispose of in the same way that I might do if living; but it is my wish and desire, and I so will that at her death, by will, or before if she so elect, that she shall divide among or settle upon my children and my grandchild the said property devised and bequeathed to her, and increase or proceeds of the same, in the following manner," particularizing the division. *Held,* that the widow took a life

estate by clear implication, with full power of disposal for value. She has no power to give away any part of the property, except that she may during her life,. if she chooses, divide the whole of the property among the children and grandchild as provided in the will. None of the legacies or bequests given to the children or grandchild are payable until after the widow's death, unless she chooses to divide the whole estate before her death. She has the right to consume such parts of the principal as may be reasonably necessary for her support in accordance with her station in life. The language of the will is such as to create a trust for the remaindermen which the statute executes in them, and of which they are now seized to take  effect in possession on the death of the mother. This is not holding that what would otherwise be a fee in the first taker can be cut down to a less estate by ambiguous words, or words not as clear and strong as those in the devise to the first taker. [Overruling Papin v. Piednoir, 205 Mo. 521, and Jackson v. Littell, 213 Mo. 589.]

Appeal from Christian Circuit Court.—*Hon. John T. Moore,* Judge.

REVERSED AND REMANDED (*with directions*).

*S. E. Bronson* and *Hamlin & Seawell* for appellants.

The following clause of the will, to-wit, "I will and bequeath to my wife Sarah Jane Gibson all of my property, real, personal and mixed wherever the same may be situated, with the power to sell, control, manage and dispose of in the same way that I might do if living," vests in the said Sarah Jane Gibson the absolute power of disposition. That being true, at the death of the testator she became the owner in fee simple of the property. Cornwell v. Wulff, 148 Mo. 542. "It has always been held by this court that the devise of real estate, with the power of disposition over it, carries the fee." Papin v. Piednoir, 205 Mo. 531; Roth v. Rauschenbusch, 173 Mo. 582; Jackson v. Littell, 213 Mo. 589.

*G. A. Watson, J. J. Gideon* and *J. C. West* for respondent.

There is, by the express terms and manifest meaning of the whole context of the will, no absolute power of disposition of the estate of the testator given to his wife. From the clause, ''but it is my wish and desire, and I so will that at her death, by will, or before if she so elect, that she shall divide among or settle upon my children and my grandchild the said property devised to her, and the increase or proceeds of same in the following manner, . . .'' it is expressly clear that the testator gave no absolute power of disposition of such estate to his wife, and that the wife of testator obtained only a life estate, with direction to divide the proceeds of the increase and the increase in all the property of the testator, among his devisees and legatees named. Armor v. Frey, 226 Mo. 646; Grace v. Perry, 197 Mo. 550; Cornwell v. Orton, 126 Mo. 355; Schorr v. Carter, 120 Mo. 409; Lewis v. Pitman, 101 Mo. 281; Munroe v. Collins, 95 Mo. 33; Harbison v. James, 90 Mo. 411. The case of Cornwell v. Wulff, 148 Mo. 542, is not authority in support of appellants in the case at bar, for the reason that said case pertained to the construction of a deed, and the court said: ''There are no words in this deed which expressly limit Mrs. Cornwell's use to her life only, nor are there any words which indicate an intention to so limit her use in said lands.'' And, further, because the same court said, in the paragraph just preceding the foregoing language: ''As pointed out in Cornwell v. Orton, page 335, that the rule has been modified, particularly in the construction of wills, in this State, by subsequent decisions to this extent only, that it is no longer necessary that the life interest should be created by the express words, but if it is the clear intention from the whole will that the first taker is to have a life estate, the added power of dis-

position will not convert it into an absolute owner-
ship.''

ROY, C.—This case is here on appeal from the
decree of·the circuit court of Christian county constru-
ing a will.

The petition is as follows:

''Plaintiff states that he is the son of John A.
Gibson, deceased, and that all the defendants, except
Bessie Ann Gibson and Sarah J. Gibson, are children
of the said John A. Gibson. That Bessie Ann Gib-
son is a grandchild, and Sarah J. Gibson is the widow
of the said. John A. Gibson, deceased.

''That on February 5, 1900, the said John A. Gib-
son made and published his last will and testament,
and thereafter on the 16th day of April, 1903, that
said John A. Gibson departed this life; that said will
was admitted to probate in the probate court of Chris-
tian county, Missouri, and is now of record in said
probate court; that said will contains the following
clause:

''  'I will and bequeath to my wife Sarah Jane
Gibson all of my property, real, personal and mixed,
wheresoever the same may be situated, with the power
to sell, control, manage and dispose of in the same
way that I might do if living; but it is my wish and
desire, and I so will that at her death, by will, or be-
fore if she so elect, that she shall divide among or
settle upon my children and my grandchild the said
property devised and bequeathed to her, and increase
or proceeds of the same, in the following manner:
I have heretofore given and advanced to my sons L. P.
Gibson and C. P. Gibson their share of my estate and
it is my will and desire that she shall give or will to
them only the additional sum of five dollars each. that
is to say to the said C. P. Gibson and L. P. Gibson the
sum of five dollars each; to the said Bessie Ann Gib-
son, the grandchild above mentioned, the sum of four

hundred dollars. To my daughter Mattie Gibson the sum of five hundred dollars, and that she shall so divide the balance of my estate real and personal, after paying said special bequests, between my children Mary Carter, W. K. Gibson, Allen B. Gibson, Mattie Gibson and Ella Shannahan, in equal portions share and share alike.'

"The plaintiff, W. K. Gibson, and defendant Allen Gibson were named in said will as executors, and they qualified as such and have proceeded to discharge their duties as such; that plaintiff, both as a devisee under said will and executor prays the court to construe said will and determine for the instruction of plaintiff, in his said office, the following questions:

"First. Whether by the terms of said will the executors have power to sell or dispose of any real estate belonging to the estate of the late John A. Gibson, there being no debts.

"Second. Whether Sarah Jane Gibson has power under said will to sell or dispose of any real estate belonging to said estate for the purpose of paying the special legacies mentioned in said will.

"Third. Whether Sarah Jane Gibson has power under said will to sell or dispose of any of the real estate belonging to said estate for any purpose.

"Fourth. Whether said will imposes the obligation on said Sarah Jane Gibson during her life, to pay the said special legacies and to divide in kind by will or deed the real estate belonging to said estate among and between Mary Carter, W. K. Gibson, Allen B. Gibson, Mattie Gibson, and Ella Shannahan, in equal portions, share and share alike.

"Plaintiff states that Bessie Ann Gibson is a minor under the age of eighteen years and unmarried, and that C. P. Gibson is a non-resident of the State of Missouri."

And on the 7th day of September, 1907, the same being one of the regular judicial days of the August,

1907, term of court, the said court rendered the following judgment, to-wit (omitting unnecessary portions of said judgment):

"The testator intended to devise and did devise to Sarah Jane Gibson, his widow, only a life estate in all his property, real, personal and mixed; that by said item he gave her the power to dispose of the real estate in the manner and form specified by said item; that is, by will or deed, before death the widow shall provide for and pay the legatees therein mentioned their legacies, and by will or deed, before her death she may, for the purposes of partition dispose of the remainder of the estate of John A. Gibson, deceased, and devised to the following named devisees, in the following manner: To Mary Carter, W. K. Gibson, Allen Gibson, Mattie Gibson and Ella Shannahan, in equal portions, share and share alike; and in the event of failing in such disposition of the property devised, the said property descends at her death to the devisees named in the will, to-wit, Mary Carter, W. K. Gibson, Allen Gibson, Mattie Gibson, and Ella Shannahan, in equal portions, share and share alike, subject to the payment of the special legacies, if they be not paid, and the court further finds and adjudges that if there be not sufficient personal estate left at the death of said widow to pay the special bequests and legacies and no disposition of such property be made by will as is provided then the executors may, under the provisions of such will, sell and convey the real estate for the purpose of paying such special bequests and legacies and for the purpose of partition among the heirs above named, to-wit, Mary Carter, W. K. Gibson, Allen Gibson, Mattie Gibson, and Ella Shannahan, in equal portions share and share alike."

The defendants have appealed.

The appellants insist that the will gives to Sarah J. Gibson a fee simple estate, and that the limitation

over to the children and grandchild of the testator is void.

In law, as in many other respects, England has cast to the westward "her seed and her shadow," and nowhere has that shadow had a more blinding effect than in the consideration of the question here involved. Nearly nine year before the common law crossed the Mississippi, our Territorial Legislature by the Act of July 4, 1807 (1 Ter. Laws, 125), made general provisions as to "Wills, descent and distribution." Section 18 of that act provided that "every person aged twenty-one years . . . shall have power at his will and pleasure, by last will and testament in writing, to devise all his estate," etc.

Section 48 said: "The judges of the respective orphan's courts, and all others concerned in the execution of any last will and testament, shall have due regard to the direction of the will, and the true intent and meaning of the testator, in all matters and things that shall be brought before them concerning the same."

When the common law, with many exceptions and qualifications, was adopted January 19, 1816 (1 Ter. Laws, 436), it was provided in effect that only such parts of that law as were "not contrary to the laws of this Territory" should be in force.

We thus see that not only the law as to the intention of the testator was the "first on the ground," but also that it was given a dominant influence in the field of interpretation.

By that Act of 1816 it was provided that "the doctrine of entails shall never be allowed."

In the revision of 1825 the following section was enacted (R. S. 1825, p. 795, sec. 19):

"Be it further enacted, That all devises made of lands, or other estate within this State, in which the words 'heirs and assigns' or 'heirs and assigns forever' are omitted, and no expressions are contained

in such will and testament whereby it shall appear that such devise was intended to convey only an estate for life, and no further devise being made of the devised premises, to take effect after the decease of the devisee to whom the same shall be given, all such devises shall be taken and understood to be the intention of the testator thereby to grant and devise an absolute estate in the same, and shall be construed, deemed and adjudged, in all courts of law and equity, in this State, to convey an estate in fee simple to the devisee for all such devised premises in as full a manner as if the same had been given or devised to such devisee, and to his heirs and assigns forever, any law, usage or custom to the contrary notwithstanding."

The Revised Statutes of 1835 (p. 119, sec. 2) provided: "The term 'heirs,' or words of inheritance, shall not be necessary to create or convey an estate in fee simple; and every conveyance of any real estate hereafter executed, shall pass all the estate of the grantor, unless the intent to pass a less estate shall appear by express terms, or be necessarily implied in the term of the grant."

Those statutes have remained substantially the same to the present time as beacon lights, though often lost to the view. No one ought to hesitate in saying that as long as the testator keeps within the limits of the laws against entails and perpetuities, he has the right under those statutes to express his intention either in express words or in words from which his intention may clearly be inferred and to have that intention executed, provided only that he does not attempt to give his property for some purpose forbidden by law.

By the common law "no remainder can be limited after the grant of an estate in fee simple; because a fee simple is the highest and largest estate that a subject is capable of enjoying; and he that is tenant

239 Sup.—32

in fee hath in him the *whole* of the estate; a remainder therefore, which is only a portion, or *residuary* part, of the estate, cannot be reserved after the whole is disposed of." [2 Blackstone, 164.]

In the case of Attorney-General v. Hall, decided by the English Court of Chancery in 1731, Fitzg. 314, the will was as follows: "I give and bequeath all my real and personal estate unto my son Francis Hall, and to the heirs of his body, to his and their use, to be paid unto him in three years after my death, and during that time I make Sir Isaac Newton executor of this my will, and after the said three years expires, I do appoint that my said son Francis shall be executor; and if my said son Francis Hall shall die, leaving no heirs of his body living, then I give and bequeath so much of my said real and personal estate, as my said son shall be possessed of at his death, to the Goldsmiths' Company of London in trust for several charitable uses mentioned in his will."

It was held that the remainder was void, because of the power of disposition in the will.

That case was followed in 1809 by Chief Justice Parsons in Ide v. Ide, 5 Mass. 499, and by two cases in New York, Jackson v. Bull, 10 Johns. 18, and Jackson v. Robins, 16 Johns. 537, decided in 1813 and 1819 respectively.

Chancellor Kent, whose commentaries were written between 1826 and 1830, says: "If, therefore, there be an absolute power of disposition given by the will to the first taker, as if an estate be devised to A in fee, and if he dies possessed of the property without lawful issue, the remainder over, or remainder over the property which he, dying without heirs, should leave, or without selling or devising the same; in all such cases the remainder over is void, as a remainder, because of the preceding fee, and it is void by the way of executory devise, because the limitation is inconsistent with the absolute estate, or power of disposi-

tion expressly given or necessarily implied by the will.'' [4 Kent, 270.]

In 1832, Smith v. Bell, 6 Peters, 68, was decided in an opinion by Chief Justice MARSHALL. The essential parts of the will were as follows: ''Which personal estate, I give and bequeath unto my said wife Elizabeth Goodwin, to and for her own use and benefit and disposal absolutely, the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin.'' Jesse Goodwin was the testator's son.

. The court said: ''In the case before the court, it is, we think, impossible to mistake the intent. The testator unquestionably intended to make a present provision for his wife and a future provision for his son. This intention can be defeated only by expunging, or rendering totally inoperative, the last clause of the will. In doing so we must disregard a long series of opinions, making the intention of the testator the polar star to guide us in the construction of wills, because we find words which indicate an intention to permit the first taker to use part of the estate bequeathed.''

It will be noticed that, according to Blackstone and Kent, if the language of the devise to the first taker, considered by itself, without reference to the succeeding parts of the will, creates a fee with power of disposition, then any limitation over is void. Those rules were not for the purpose of discovering the intention of the testator, but they resulted in the destruction of that intention. As stated by MARSHALL, J., in his dissenting opinion in Cornwell v. Wulff, 148 Mo. 576, ''In our day there is not the undefined apprehension about tenures that formerly disturbed the placid dreams of our English predecessors in the law.''

Kent himself says: ''Perpetuities, as applied to real estates, were conducive to the power and gran-

deur of ancient families, and gratifying to the pride of aristocracy; but they were extremely disrelished by the nation at large, as being inconsistent with the free and unfettered enjoyment of property. 'The reluctant spirit of English liberty,' said Lord Northington, 'would not submit to the statute of entails; and Westminster Hall, siding with liberty, found means to evade it.' '' [4 Kent, 264.]

This court has never been in dread of entails or perpetuities, hence, as "reason is the life of the law," those rules making such limitation over void, never should have been given any vitality in this State.

Such was the situation when in 1848 Rubey v. Barnett, 12 Mo. 3, was decided. In that case the first taker was, by *express words,* given only a life estate; so that the question here involved was not in issue there. Yet the court said (l. c. 6): "But a devise to a wife *for life,* and after her decease she to give the same to whom she will, passes but an estate for life with a power; yet if an *express estate for life* had not been devised to the wife, an estate in fee would have passed by the other words."

Thus it will be observed that, as to the question then in hand the above language declaring that the life estate could be created only by *express* words was *obiter.* That case made no reference to any of the above statutes or to Smith v. Bell, supra, but did cite with approval Jackson v. Robins, supra, and has become, in spite of its origin, the leading case in the State by authority of which remainders limited over on what would otherwise have been a fee, have been sometimes declared void, even as late as Jackson v. Littell, 213 Mo. 589.

In Chiles v. Bartleson, 21 Mo. 344, the third item of the will gave the property to the wife generally. The eighth item provided: "And further, it is my will that the bequests made to my wife, Frances, at her death, be equally divided between my four chil-

dren.'' · Judge LEONARD said: ''The intention of the
testator is plain enough; the whole will must be read
together, and effect given to every clause of it, and
the words used are to be understood in the sense indi-
cated by the whole instrument. Our duty, in the lan-
guage of our own statute, is 'to have regard to the
true intent and meaning of the testator.' ''

We shall now proceed to enumerate the cases in
this State construing wills or deeds devising or con-
veying property to the first taker generally with power
of disposal and with a limitation over of the part un-
disposed of. We shall not burden this opinion with
a statement of the language of each instrument con-
strued, but will refer the reader to the respective cases.
In Green v. Sutton, 50 Mo. 186, it was held that the
limitation over was void. Now it will be noticed, and
this remark will apply to all the cases, that where the
remainder has been declared void, it is necessarily
on the ground, not that the intention of the testator
was not clear, but that, however clearly it might be
expressed, it was void.

In the case of Carr v. Dings, reported in 54 Mo.
95, and 58 Mo. 400, it was held that the remainder
was valid, but without an extended consideration of
the authorities. The case of Straat v. Uhrig, 56 Mo.
482, likewise held the remainder valid, but again there
was no discussion of the authorities.

State ex rel. v. Tolson, 73 Mo. 320, held the re-
mainder void, as did also Wead v. Gray, 78 Mo. 59.
In the latter case it was said that the case of Smith
v. Bell, supra, had not been followed in this State. It
may also be said that in none of the cases holding the
remainder void was any mention made of the statute
in regard to the construction of wills.

In Bean v. Kenmuir, 86 Mo. 666, the court was
divided, a majority of three holding the remainder
valid, while two held, not that the testator did not
intend to create a remainder over, but that such re-

mainder was void. The unanimous court in Harbison
v. James, 90 Mo. 411, held such remainder valid and
approved Smith v. Bell, supra. So, it could no longer
be said that that case was not followed in this State.
The latter case was followed and approved in Munro
v. Collins, 95 Mo. 33.

In Lewis v. Pitman, 101 Mo. 281, the remainder
was upheld, all concurring, in the following language:
"If the first taker is to have but a life estate, then
it matters not whether this appears from express
words creating a life estate or from a consideration
of the whole will. What difference can it make in
which form the testator expressed his intention, so
that it is clearly expressed? There may be and are
many cases when the added power of disposition will
turn the scale, but if it is the intention of the tes-
tator to give the first taker a life estate only, not-
withstanding the power of disposition, then that inten-
tion ought to prevail. This is the common sense view
of the matter, and it has the support of well consid-
ered judgments."

Schorr v. Carter, 120 Mo. l. c. 414, has this lan-
guage: "It is also a well settled rule of law that the
whole will must be construed together, not in detached
parts; and if it be manifest, when so construed, that
he did not intend to pass the fee, then the intention
must prevail. The rule thus announced does not con-
flict with the one that, where an estate is given in one
part of the instrument, such estate cannot be taken
away, or cut down by raising a doubt upon the extent
of meaning or application of a subsequent clause, or
by inference therefrom, or that a remainder cannot
be engrafted on a fee."

Cornwell v. Orton, 126 Mo. 355, decided in this
Division, quoted with seeming approval from Lewis
v. Pitman, supra, as follows: "If it is the clear inten-
tion from the whole will that the first taker is to have
but a life estate, then the added power of disposition

will not convert the estate into one of absolute own-
ership.'' And yet, after making that quotation, the
court said: ''It follows that we have a remainder lim-
ited after a fee simple absolute, and we have seen this
can no more be done now than at common law. The
limitation over is inconsistent with, and repugnant
to, the grant to Mrs. Cornwell.''

Thus it will be seen that while this last case
holds that the court must consider the whole will to
find the intent of the testator, yet, if such intent be
found to limit a remainder over on what would other-
wise have been a fee, then the remainder is void. Here
we may ask the question, Why travel all over the
instrument diligently searching for the intention of
the testator as expressed therein, and then destroy it
as soon as found by declaring it void?

In McMillan v. Farrow, 141 Mo. 55, such remain-
der was held valid by this Division, the court laying
stress on the fact that the testator, in creating the re-
mainder over, used the words ''whatever of *my* prop-
erty may remain undisposed of at her death, I give
and bequeath,'' etc.

Cornwell v. Wulff, supra, again reached this
court, 148 Mo. 542, and the remainder was held void
by a divided court in Banc of four to three. The ma-
jority again held the position assumed when the case
was first here that although it was not necessary that
the life estate should be created by express words, but
that such intention might appear from the whole in-
strument, yet, in the language of the court, ''It goes
without saying that, if this conveyance is to be tested
by common law principles, having created an estate
in fee simple in Mrs. Cornwell, any attempt to create
a remainder thereafter would be void.''

MARSHALL, J., in a dissenting opinion, called at-
tention to the lack of harmony in the decisions on the
subject, and collated the cases on both sides of the
question, and after speaking of the fact that an ex-

pressly created life estate with power of disposal did
not amount to a fee, said: "If this is permissible
because it effectuates the intention of the grantor,
what logic is there in requiring the grantor to ex-
press his intention in set or stereotyped language, and
in refusing to observe that intention when clearly ex-
pressed in equivalent terms?"

The next case, Walton v. Drumtra, 152 Mo. 489,
decided February 7, 1899, in Banc, all concurring, held
that the remainder was valid. Four members of the
court held that Cornwell v. Wulff, supra, should be
overruled, while three of them distinguished that case
from the one then being considered, and were unwilling
to overrule Cornwell v. Wulff.

In Cross v. Hoch, 149 Mo. l. c. 343, it was unan-
imously held by Division One that the remainder was
valid. Attention was called to what is now section
2870, Revised Statutes 1909, providing that "every
conveyance of real estate shall pass all the estate of
the grantor therein, unless the intent to pass a less
estate shall expressly appear or be necessarily implied
in the terms of the grant," and the court then said:
"Thus the statute recognizes that an absolute estate
may be limited in express terms to a life estate, and
that it may also be limited to a life estate by the neces-
sary implication of the terms of the grant. This is
not only the statute law of the State, but the same
rule has become thoroughly imbedded in the jurispru-
dence of the State by judicial interpretation."

The case of Yocum v. Siler, 160 Mo. 281, is often
cited in this connection, and we refer to it for that
reason, but an examination of that case will show that
it did not belong to the class of cases under consider-
ation.

Roth v. Rauschenbusch, 173 Mo. 582, decided by
this Division, held the limitation over void. In that
case it was said, "After all the discussion in Corn-
well v. Wulff and Walton v. Drumtra, 152 Mo. 489, in

which the construction placed by this court upon the deed in Cornwell v. Wulff was discredited, the law remained just as it had been announced by this court in that case and the courts generally throughout the land.'' The case was not sent to the court in Banc, and this Division assumed the responsibility of overruling, in effect, the decision of the full court in Walton v. Drumtra.

Then followed the cases of Gannon v. Albright, 183 Mo. 238, and Gannon v. Pauk, 183 Mo. 265, the latter case being reported on second appeal in 200 Mo. 75. We will not try to state the scope of those cases, but refer to them in order to call attention to the fact that it was finally held that the property had been disposed of under the power of disposal, so that the question of the validity of the limitation over was not at the last involved in the case.

In Papin v. Piednoir, 205 Mo. 521, and in Jackson v. Littell, 213 Mo. 589, both decided by this Division, the limitation over was held void. In both cases there was an express power of disposal, and both those cases are opposed to the opinion of the court in Banc in Walton v. Drumtra.

The opinion of Fox, J., in Armor v. Frey, 226 Mo. 646, and of FERRISS, J., in Threlkeld v. Threlkeld, 238 Mo. 459, would make it unnecessary to go at length into this question, were it not for the fact that the wills in those cases had no express power of disposal, while in the case under consideration the issue is presented in substantially the same condition as in Papin v. Piednoir and Jackson v. Littell, supra.

We have reached a different conclusion from that of this Division in those cases, and we think the opinion of the court in Banc in Walton v. Drumtra, supra, is and should be the rule in this State. We have not overlooked the fact that in the opinion of four members of the court in Banc in Gannon v. Albright, 183 Mo. 238, it was said that the remainder was void, yet

in that same opinion, in summing up, it was said, l. c.
264: "Finally, that by the said fourth clause of the
will the said two sons took a fee simple subject to be
defeated upon their dying without issue living at
their death, and as both died leaving children, the
plaintiffs herein, the contingency upon which their fee
simple was to be defeated never happened and never
can happen, and their estate in fee became absolute,
and their warranty deeds conveyed to defendants'
grantors the fee simple title." Thus it is seen that
the validity of the remainder over was not involved
in that case, and it does not impair the authority of
Walton v. Drumtra, which is followed in Threlkeld
v. Threlkeld, and Armor v. Frey, supra; and we like-
wise follow it.

In what we have above expressed we do not wish
to be understood as holding that what would other-
wise be a fee in the first taker can be cut down to a
less estate by ambiguous words, or words not as clear
and strong as those in the devise to the first taker.

Coming now to the consideration of the Gibson
will, we find that it directs the widow to divide the
estate by will as therein prescribed in case she does
not so divide it in her lifetime. The language is more
than precatory. It is absolute. It leaves no discre-
tion in the matter to her. If it were merely a case
of precatory trust, the trust would be enforced in fa-
vor of the children and grandchild. [Noe v. Kern, 93
Mo. 367.] But we think the language of the will is
such as to create a trust for the remaindermen which
the statute executes in them, and of which they are
now seized to take effect in possession on the death
of the mother. That remainder is one in "said prop-
erty devised and bequeathed to her and the increase
or proceeds of the same" in the amounts and propor-
tions set out in the will. In the creation of that re-
mainder, he identifies the objects of his affection and
bounty as clearly as in the devise to the wife, and

states clearly what property he gives them and how it shall be apportioned, and the language used is without ambiguity.

We reach the conclusion that the widow took under the will a life estate by clear implication, with full power of disposal for value. She has no power to give away the property or any part of it, not even to the children, except that she may during her life, if she so chooses, divide the whole of the property among the children and grandchild as provided in the will. None of the legacies or bequests given to the children or grandchild are payable until after the widow's death, unless she chooses to divide the whole estate before her death. She has the right to consume such parts of the principal as may be reasonably necessary for her support in accordance with her station in life.

The decree, which is not in all respects in harmony herewith, is reversed and the cause remanded with directions to enter a decree in accordance with the opinion. *Blair, C.,* concurs.

- ˙ PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All concur.