# Richmond

VERNA E. SOUTHWORTH V. FANNIE SULLIVAN AND OTHERS.

March 22, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*David Meade White* and *Millan & Smith,* for the appellant.

*George E. Haw* and *William C. Miller, Jr.,* for the appellees.

EPES, J., delivered the opinion of the court.

Benjamin F. Marshall died in March, 1909, without issue, leaving a will dated February 26, 1907, the material parts of which read:

"I give and bequeath to my beloved wife Louisa Marshall my entire estate both real and personal of every description to have in fee simple to use as she may best see fit for her maintenance while she may live even if it consumes all.

"Whatsoever may be left at her death I desire shall go to my beloved niece and adopted daughter Verna E. Southworth save any article of personal property as she may see fit to bestow upon some friend that kindly considered her in her last days."

Verna E. Southworth was the testator's niece, who lived with him and his wife in their home and was commonly spoken of by him as his adopted daughter. She was not related by blood to Mrs. Marshall.

At the time of his death Benjamin F. Marshall owned a lot with a dwelling thereon in the city of Richmond,

Virginia, known as 2613 East Clay street. Mrs. Marshall died intestate in 1929, without having disposed of this property. After her death Verna E. Southworth (who was in possession of the property) filed her bill in chancery against Fannie Sullivan and the other heirs of Mrs. Marshall to have the court construe and declare the legal effect of the will of Benjamin F. Marshall, and determine whether the title to 2613 East Clay street passed upon the death of Mrs. Marshall to her (Verna E. Southworth) under the will of Benjamin·F. Marshall, or by descent from Mrs. Marshall to her heirs.

The case was submitted to the court on the pleadings. The court decreed that Mrs. Louisa Marshall took under the will of Benjamin F. Marshall a fee simple estate in all his property; that the remainder which the testator attempted to give to Verna E. Southworth was void, and that upon the death of Mrs. Marshall the property here in question passed by descent from her to her heirs. From this decree Verna E. Southworth has appealed.

■ She contends that the court erred in not holding that the limitation over to her was rendered valid by chapter 146, Acts 1908, p. 187, amending section 2418,[1] Code Va. 1887, which became effective June 26, 1908. Section 2418, as amended by this act, reads as follows:

"Any interest in or claim to real estate may be disposed of by deed or will. Any estate may be made to commence *in futuro,* by deed, in like manner as by will, and any estate, real or personal, may be disposed of by deed or will with power of absolute disposition by the grantee, devisee or legatee with limitation over by way of remainder, or executory interest, of such portion of such estate so granted, devised, or bequeathed, which shall not have been absolutely disposed of by such grantee, de-

---

[1] Section 2418, Code 1887, reads: "Any interest in or claim to real estate may be disposed of by deed or will. Any estate may be made to commence, *in futuro,* by deed, in like manner as by will; and any estate which would be good as an executory devise or bequest shall be good if created by deed."

visee, or legatee, in his or her lifetime, which said remainder or executory interest, shall be valid and shall pass as directed by such grantor or testator; provided, however, that a deed of trust or mortgage shall not be construed to be such absolute disposition of the estate thereby conveyed, unless there be sale thereunder; and any estate which would be good as an executory devise or bequest, shall be good if created by deed."

The act of 1908 remained in force until the Code of 1919 became effective on January 13, 1920. In the Code of 1919, it is replaced by section 5147,[2] the language of which is materially different from that of the act of 1908.

In support of her position the appellant makes two contentions: (1) She contends that under the will Mrs. Marshall is given a life estate which, under the doctrine of *May* v. *Joynes,* 20 Gratt. (61 Va.) 692, would be raised by implication of law to a fee simple estate from the fact that she is given the full and absolute power to dispose of and consume the *corpus* of the estate; and that, whatever other application the act of 1908 may have, it certainly applies to all cases falling within the doctrine of *May* v. *Joynes.* (2) She contends that the act of 1908 is not limited in its application to grants and devises which fall within the doctrine of *May* v. *Joynes;* but applies where *any* estate in property, real or personal, is granted or devised to a person with the express or implied grant or devise to him of the full power to dispose of the property.

[2] "Any interest in or claim to real estate may be disposed of by deed or will. Any estate may be made to commence *in futuro*, by deed, in like manner as by will; and any estate which would be good as an executory devise or bequest, shall be good if created by deed.
"If any interest in or claim to real estate or personal property be disposed of by deed or will for life, with a limitation in remainder over, and in the same instrument there be conferred expressly or by implication a power upon the life tenant in his lifetime or by will to dispose absolutely of said property, the limitation in remainder over, shall not fail; or be defeated, except to the extent that the life tenant shall have lawfully exercised such power of disposal; provided, however, that a deed of trust or mortgage executed by the life tenant shall not be construed to be an absolute disposition of the estate thereby conveyed, unless there be a sale thereunder."

The reasoning upon which the court predicated its decree is set forth in an opinion written by the learned chancellor, which is filed as a part of the record, and may be thus epitomized:

(1) The language used by the testator expresses an intention to give his wife an estate in fee simple in all his property. He expressly gave it to her "to have in fee simple." The words "to use as she may best see fit for her maintenance while she may live even if it consumes all" were used to express the motive for giving all his property to her in fee simple, and are not to be construed as expressing an intention to give her only a life estate in his property with the power annexed to consume the *corpus* of it. Mrs. Marshall took under the will a fee simple estate expressly given, not a life estate raised to a fee simple by implication of law under the doctrine of *May* v. *Joynes.*

(2) At common law "when a testator, or grantor plainly intends an absolute fee simple in the first taker, and expressly so states, an absolute fee simple in the first taker is given, and any intent to limit a remainder on an absolute fee simple expressly given to the first taker is void, not because the court fails to perceive the intent, but because any limitation over after an absolute fee simple is against the law."

(3) The act of 1908, amending section 2418, Code 1887, was not intended to and should not be construed to apply "where an express fee simple estate is given to the first taker, because having disposed of his absolute estate to the first taker there was nothing left in the donor or grantor to dispose of and hence any limitation or gift over is void because repugnant to the absolute fee simple already disposed of."

We concur in the view of the chancellor that the devise here in question does not fall within the rule commonly known as the rule or doctrine of *May* v. *Joynes;* but we are of opinion that the court erred in holding that

the act of 1908 does not apply to the devise here in question.

The rule or doctrine of *May* v. *Joynes,* 20 Gratt. (61 Va.) 692, as it has been developed in that case and the cases which have followed it may be stated thus: When property, real or personal, is granted, devised or bequeathed to a person for his life, and afterwards there is granted or given to him, either in express terms or by implication, the full power to dispose of the property, this is equivalent to the grant or gift to him of a fee simple estate, if it be real property, or an absolute estate, if it be personal property, and the gift over of so much of the property as shall not be disposed of by the first taker is void.

The rule of *May* v. *Joynes* is an extension of the rule that, where property, real or personal, is granted or devised to a person generally (*i. e.,* without using words limiting or defining the duration of the estate given him), if he is thereafter given, either expressly or by implication, the full and absolute power to dispose of the property, a gift over to another of so much of the property as he shall not dispose of is void. For an application of this rule see *Bing* v. *Burrus,* 106 Va. 478, 56 S. E. 222.

This last-mentioned rule is an application of the rule that where land is granted or devised "to A and his heirs"[3] or "to A in fee simple," or personal property is granted or bequeathed to him by words importing that he is given the absolute title thereto, a gift over of so much of the property as shall not be disposed of by him is void. The application was originally gotten by holding that the annexation of an express or implied gift of the full power of disposition to a grant, devise, or bequest generally to a person shows that the grantor or testator intends to give him a fee simple in the property if it is real estate and the absolute title thereto, if it be personal property.

Though all three of these rules have become so firmly

[3] See *Melson* v. *Doe,* 4 Leigh (31 Va.) 408.

fixed in Virginia by judicial decisions that they should not be changed except by legislative enactment, none of them have been permitted to go unchallenged. However, as we shall hereafter see, the extent to which they have been criticized differs.

As is noted by the chancellor, the act of 1908 has never been construed by this court. But the chancellor in his opinion quotes, and the appellees in their brief rely upon, what is said by this court in its opinion in *Wornom* v. *Hampton, etc., Institute,* 144 Va. 533, 540, 541, 132 S. E. 344, 345, as inferentially supporting the view taken by the chancellor, because the will there under consideration was the will of testator who had died in 1912, while the act of 1908 was in force.

If it be assumed that in *Wornom* v. *Hampton* the court had under consideration the act of 1908, or that its attention was directed to that act, some parts of what is said in the opinion in that case do tend inferentially to support the view taken by the chancellor as to the construction of that act. But upon an examination of that opinion and the record in that case it is plain, we think, that what was said there was said without reference to, and without having given any consideration to, the act of 1908, and cannot properly be deemed to have been intended as a statement of the law after giving effect to that act.

In that case, by the third clause of his will, Simon Bryant devised to his wife, Catharine Bryant, "absolutely and in fee simple all property real, personal or mixed of which I may die seized of and possessed, * * * to use and dispose of as she may desire." * * * By subsequent provisions in his will he devised all the several parcels of real estate which he owned at the date of his will to his daughter and other persons "in fee simple." Among these later devises was a devise of six lots of land to Sallie Wornom. In 1922 Mrs. Bryant conveyed a part of the land included in the devise to Sallie Wornom to the Hampton, etc., Institute. After Mrs. Bryant's death Sallie Wornom brought her suit to have the deed from Mrs. Bryant to the Hamp-

ton Institute declared null and void and of no effect on the ground that under the will of Simon Bryant she (Sallie Wornom) took immediately upon the death of the testator a fee simple estate in the property therein devised to her and Mrs. Bryant took no interest therein. The contention of the Hampton Institute was that the will when read as a whole expressed an intention to devise all his property to Mrs. Bryant with the full power to dispose thereof, but with a remainder over to Sallie Wornom of the parcels of land devised to her in the event that Mrs. Bryant died without having disposed of them.

The court held that the interpretation of the will contended for by the Hampton Institute was the correct interpretation of it. As Mrs. Bryant had disposed of the property in issue, this was determinative of the case, regardless of what construction should be placed upon the act of 1908. The act of 1908 is not referred to in the pleadings, the briefs of counsel or the opinion of the court, and no consideration appears to have been given the act of 1908 by court or counsel.

The only cases to which our attention has been called which comment upon the act of 1908 are *Steffey* v. *King,* 126 Va. 120, 101 S. E. 62; *Barnett* v. *Blain,* 126 Va. 179, 101 S. E. 239; and *Skinner* v. *Skinner's Adm'r,* 158 Va. 326, 163 S. E. 90, 91.

In *Steffey* v. *King* and in *Barnett* v. *Blain* the wills under consideration were the wills of testators who had died prior to 1908, and the devises under consideration were devises which the court held fell within the rule of *May* v. *Joynes.* In each of these opinions, in commenting upon the devise in question, the court intimated that it entertained the view that, had the testators died after the act of 1908 became effective, the remainder over of what was not disposed of by the first taker would have been rendered valid by that act. But in neither of them did it express or intimate any opinion as to whether the act applied, to devises which did not fall within the doctrine of *May* v. *Joynes.*

In *Skinner* v. *Skinner's Adm'r* the court had under consideration the will of a testator who had died after section 5147 of the Code of 1919 had become effective, and a devise which it construed as neither expressly nor impliedly expressing an intention to give the first taker a life estate. In the opinion in that case the court does not purport to construe the act of 1908, but in commenting upon section 5147, this language is used:

"In 1908, the Virginia legislature passed an act the purpose of which was to abolish or modify this doctrine, so as to preserve the remainder, when the life tenant died, leaving undisposed, unused or unconsumed any portion of the estate or property acquired under the will. In the wisdom and judgment of the revisors of the Code of Virginia of 1919, this act went too far. They seemed to see it probably sweeping away what had become a canon of property, and so out of their crucible came the present section of the Code." * * *.

Further than the *dicta* contained in these three cases, we find no utterance of this court which bears upon the question of the construction of that act. It has, however, received the consideration of several textwriters and commentators; and all who have directed their attention to the subject express the view that the language of the act does not limit its application to cases falling within the rule of *May* v. *Joynes,* and that, if it is limited in its application to that class of cases, it will have to be done by judicial construction. But none of them suggest any ground upon which the court might rest a construction limiting its application to cases falling within that rule.

In the July, 1908, issue of the Virginia Law Register, 14 Va. Law Reg. 161, Mr. Preston Cocke of the Richmond bar calls attention to several interesting questions which may arise in practice in the application of the act of 1908 "to wills of the *May* v. *Joynes* class." In this article he accepts the act of 1908 as "an attempt to abolish" the rule of *May* v. *Joynes,* but he does not discuss the question of whether it has any wider application.

In the first edition of Minor on Real Property (1908) the author says:

* * * "it is an established rule that where the *full and absolute power to dispose of the property* is given to the first taker, and only what is *left undisposed of* by him is to go to the second taker, the limitation is *void* (1) for *repugnancy,* and (2) because of the *uncertainty* of the property to go to the second taker.

\*        \*        \*        \*        \*        \*        \*        \*

"The same principle formerly applied in Virginia if the first taker were expressly given a *life estate,* but accompanied by a *full power of disposition.* * * * But this doctrine is now modified, if not abrogated, by statute." (Citing Acts 1908, p. 187, ch. 146.)

"Whether the statute just referred to applies to the first class of cases, namely, where the first taker takes an *express fee simple* or a *general devise or grant* (not designating any particular estate), or whether it shall be construed to apply only to the second class of cases, where the first taker takes only a *life estate expressly,* but which is enlarged by implication under the doctrine of *May* v. *Joynes,* remains to be seen. While the primary object of the statute seems to have been to abolish the latter doctrine only, the language of the act is broad enough to cover both classes of cases." 1 Minor on Real Prop. (1st Ed.) section 858, p. 942.

In his address on the Code of 1919, Judge Burks (who was one of the revisors), in commenting on section 5147, says:

"Perhaps no statute in Virginia has been the subject of more speculation as to its meaning than the act of 1908 amending section 2418 of the Code of 1887, the primary object of which amendment was to abolish the rule commonly known as the doctrine of *May* v. *Joynes.* The revisors redrafted the amendment, and have sought to improve its phraseology. Its meaning also has probably been changed. The revised section is expressly restricted to devises and bequests for life, with absolute

power of disposition. The act of 1908 did not contain the words 'for life' and the language was broad enough to apply to a class of limitations which was probably not intended to be affected by the act." Burks' Address, 5 Va. Law Reg. (N. S.) 97, 109.

In 1 Harrison on Wills (1927), section 243 (7), Judge Harrison, after quoting the act of 1908, makes this comment on it:

"This statute applies to any estate. The words are very broad. It may be a life estate or a fee simple. It may apply to real or personal property or to a legal or equitable estate. 'Any estate' is the broad language of the statute. The statute also *saw* the power of disposition may be absolute. The remainder may be of any such portion of the estate as is not absolutely disposed of by the devisee or legatee. Is the property liable for the debts of first taker? Even a deed of trust or mortgage thereon is to have no effect unless the mortgage or deed of trust be enforced in the lifetime of the first taker. How about a sale under an execution? No decision of the court has yet construed this statute, but it is a complete reversal of all the decisions we have cited in Virginia, if full effect is given to its purport. There are a few jurisdictions in which such limitations on a devise in general terms are given effect, but the general authority throughout the United States is to the effect that where an estate is created in general terms with an absolute power of disposition, any limitation of what remains undisposed of is void. The statute really impairs the power of absolute disposition because where the first taker is not permitted to mortgage the interest given him, unless the mortgage is enforced in his lifetime, but is only given the power to make an absolute sale of the property, it cannot be said he has an unqualified power of disposition. The statute hardly intends to interfere with a power to mortgage expressly given in the will, but presumably does not intend to include within the power of absolute disposition the right to mortgage.

"It would be entirely within the power of the first taker to destroy the remainder by an absolute conveyance to a third party even though such third party would reconvey to the first taker.

"Again could the first taker dispose of the property by will?  The will would be executed in the lifetime of the first taker, but as such will does not take effect until after his death, it is presumed the statute *would apply*.

"The revisors of the Code of 1919 in section 5147, have materially changed the act of 1908.  By the amendment the 'estate' is a life estate in express terms."  (Italics ours.)

Then after quoting section 5147, Code 1919, he adds: "Except then, as to *express estates* for life, the old construction is restored."

To escape the difficulty presented by the use of the language "any estate, real or personal," the appellees insist that there is no such thing as "an estate real" or "an estate personal;" and that it is manifest that both in this phrase and in the other parts of the new matter inserted in section 2418, Code 1887, by the act of 1908, the word "estate" means *property* and should be so read wherever it is used.  But, even if it be granted that this contention is well made and the word *property* were inserted in lieu of the word *estate,* the language of the act would be just as broad as if it read *any estate in property, real or personal,* though somewhat less explicit.

There is nothing in the language of the act of 1908 upon which a construction limiting its application to cases falling within the rule of *May* v. *Joynes* can be predicated.  If it is to be so construed, the construction must be based upon something outside its language.

In its final analysis the reason for the contention that it should be so construed, because of considerations apart from the language of the act, narrows itself down to the fact that the rule of *May* v. *Joynes,* which did not become established in Virginia until 1857, has been severely criticized by many courts and textwriters as unsound.

But this reason loses whatever force it may seem to

have when we consider that, though the rule of *May* v. *Joynes* is of later development and has been more intensively criticized than the others, all these rules have been severely criticized on the ground that they are archaic, arbitrary and vexatious rules of law, based upon highly technical reasons of an unsatisfactory character, which defeat the plain intention of the testator, although there is no inherent, logical difficulty in giving effect to his intention or substantial reason of public policy for refusing to give it effect.

None of them is a rule of construction. They are not designed to ascertain or carry out the intention of the grantor or testator. Their avowed purpose, as was that of the rule in *Shelley's Case,* is to defeat his clearly expressed intention.

The rule of *May* v. *Joynes* has been rejected as unsound by most of the courts and text-writers who have considered the subject. The large majority of the courts hold that where a grantor or testator explicitly gives property to a person for his life, the annexation thereto of the power to dispose of the property, or to dispose of the property and consume the proceeds, does not show an intention to give him an estate in fee simple, or the absolute title to the property, or operate to enlarge the life estate to a fee simple estate in land or absolute title to personal property. 1 Tiffany on Real Prop. section 32, p. 80; 1 Minor on Real Prop. (2d Ed.) section 707, note 2; Gray on Restraints on Alienation (2d Ed.) section 74d; *Mooy* v. *Gallagher,* 36 R. I. 405, 90 Atl. 663, Ann. Cas. 1916D, 395, L. R. A. 1916C, 1040, and note; *Steiff* v. *Seibert,* 128 Iowa 746, 105 N. W. 328, 6 L. R. A. (N. S.) 1186, and note.

A large majority of the courts hold that a grant or devise of property to a person generally (*i. e.,* without explicitly limiting the duration of the estate granted or given) with the express or implied power to dispose of the property, shows an intention to give him a fee simple estate, if it be land, or the absolute title, if it be personal

property, even though there is a gift over of so much thereof as he shall not have disposed of; and that the limitation over is void. But some courts have held with a strong show of reason that where such a grant or devise is made, the gift over shows clearly an intention to give the first taker only a life estate with the power annexed to dispose of the property, and that the gift over is valid. *Cales* v. *Dressler,* 315 Ill. 142, 146 N. E. 162; *Robinson* v. *Finch,* 116 Mich. 180, 74 N. W. 472, 473. See, also, *Gibson* v. *Gibson,* 239 Mo. 490, 144 S. W. 770. These courts of course, reject the rule of *May* v. *Joynes.*

The rule that where land is granted or devised "to A and his heirs" or "to A in fee simple," or personal property is granted or bequeathed to him in terms of like import, either with or without an express provision that he shall have the full power to dispose thereof, and there is a gift over of so much thereof as he shall not dispose of, the limitation over is void, has been generally adopted and is firmly intrenched in the decisions of the courts. But this rule (upon which both the rule mentioned in the paragraph above and the rule of *May* v. *Joynes* has to be ultimately rested) and the reasons advanced in its support have been much criticized by textwriters and commentators. See 1 Tiffany on Real Prop. section 167; Gray on Restraints on Alienation (2d Ed.) sections 66-74g; article by Edward Brooks, Jr., Esq., 32 Am. Law. Reg. (N. S.) 1035; Editorial Notes, 16 Harv. Law Rev. 458; 8 Columbia L. Rev. 397, and 17 *Id.,* p. 525.

In 1 Tiffany on Real Prop., section 167, the author discusses at length what he terms "the unsatisfactory character of the reasons judicially advanced in its support," shows that it is not based upon any consideration of public policy, and demonstrates that the technical reasons commonly advanced in its support are not founded upon sound reasoning. Especially does he point out the weakness in the two reasons most commonly advanced in support of the rule by the American courts, which are (1) that the gift over is repugnant to or inconsistent with the

absolute estate, or, as some courts say, with the absolute power of disposition given the first taker, and (2) that a limitation over is not good as an executory limitation, if the first taker has the ability by his own act to defeat the limitation.

In his treatise on restraints on alienation Prof. Gray divides into three classes the cases to which is applied the broad rule above stated, that, where property is granted, devised or bequeathed "to A in fee simple," with or without the express grant to him of power to dispose thereof, a gift over of so much thereof as he shall not dispose of is void.

In his first class he places grants, devises or bequests of real estate to a person in fee simple, or personal property to be held by the grantee absolutely, with the power to dispose thereof *during his lifetime*, but not by will, with a gift over of so much thereof as the first taker shall not dispose of during his lifetime.

He expresses the opinion that in this class of cases, if it be assumed that the first taker takes the fee simple estate or absolute interest in the property, the holding that the limitation over is void may be sustained with some reason on the ground that, as a will is one of the modes of alienating property, the limitation over is void, because "such a provision undertakes to limit the modes in which an alienation may take place, and makes the gift over fail or take effect accordingly as the alienation is by deed or will." But he points out that the fact that the grantee is given the power to dispose of the property by deed but not by will is a strong indication that the grantor or testator intended that he should take merely a life estate with the power of appointment. Gray on Restraints on Alienation (2d Ed.) section 56.

This ground for holding that such a limitation over is void (*i. e.*, that it is a restraint on alienation) is so highly technical that there are few courts which have been willing to rest their holding on it, and our attention has been directed to no case in which the Virginia court has advanced this as a reason for so holding.

In the second class Gray places grants or bequests of personal property, such as money, with a gift over of so much thereof as shall not be disposed of by him "either in his lifetime or by his will."

He expresses the opinion that in this class of cases a holding that the gift over is void may be sustained, with good reason, on the ground of the "uncertainty, and difficulty, if not impossibility, of determining the subject matter of the gift over." As pointed out by him, this was the reason originally given .for holding the limitation over void in this class of cases. Gray, Restraints on Alienation (2d Ed.) section 58.

It would seem that this reason would be equally as valid in a case in which personal property, such as money, was given with a gift over of so much thereof as the donee should not dispose of during his lifetime, but without power to dispose thereof by will. But it wholly fails where the evidence in the instant case shows that the property has not been disposed of.

In his third class Prof. Gray places grants or devises. of real estate to a person in fee simple with a gift over of so much thereof as he shall not dispose of *by deed or will.*

With reference to the holding that in this class of grants or devises the gift over is void, he has this to say in section 57: "It is not at first easy to say why this should be so; the owner of the land has full power of alienation, either by deed or will. It rests indeed with him to say whether the gift over shall take effect, but that is the case with many executory devises. * * * What illegality is there in an executory devise depending upon A's not making a deed or will, if he has the power of making one should he so wish?" He then examines the ground of uncertainty upon which some of the courts have rested, in part, the holding that the limitation over is void in such cases, and says in section 59: "This objection of uncertainty does not, however, apply to real estate and if a devise over of land upon the intestacy of the first taker

is to be deemed bad, some other reason must be found for the conclusion."

Taking up the other reasons which are commonly assigned by the courts for holding void the limitation over in this third class of cases, Prof. Gray says:

"Section 74. A gift over after a devise of a fee simple, in case the devisee does not dispose of it in his lifetime or by his will, has therefore been often held void. But, considering the variety of the reasons given and their unsatisfactory character; and also the contrary cases of *Doe d. Stevenson* v. *Glover,* 1 C. B. 448; *Hubbard* v. *Rawson,* 4 Gray (Mass.) 242; and *Andrews* v. *Roye,* 12 Rich. (S. C.) 536; the matter certainly deserves a more thorough consideration from the courts than it has yet received; and if the contingency of not making either a deed or a will is an illegal basis for an executory devise, some more reasonable ground for the proposition than those usually given is to be desired.

\*  \*  \*  \*  \*  \*  \*  \*

"74b. The establishment of this doctrine is an interesting instance of what naturalists call a reversion to a primitive type. In the barbarous stages of law, courts thwart the intention of parties to transactions by rules and restrictions which are not based on considerations of public advantage, but are formal, arbitrary, and often of a *quasi* sacred character. The process of civilization consists in the courts endeavoring more and more to carry out the intentions of the parties or restraining them only by rules which have their reason for existence in considerations of public policy. \* \* \*

"74c. A gives a piece of land to B and his heirs, and says, 'You may do with this just as you please, in life or by will, but if you do not part with it, and do not devise it, it shall go to C.' This gift to C is bad. Why? What are the reasons given? They are, first, that the gift over is repugnant; second, that the passage of a fee simple on death of the tenant intestate to the heirs is a necessary incident of the estate; third, that an executory devise con-

tingent upon a circumstance which it is in the power of the first taker to prevent happening is void. The first is the reason originally given; the second is the reason given by Fry, J., in *Shaw* v. *Ford* (7 Ch. D. 669, 673) ; the third is Chancellor Kent's. But these are only words. They merely mean that the courts have set up a certain rule, and that the proposed provision is inconsistent with it; but why that rule should be set up, what interests are forwarded by it, how it helps the well-being, moral or material, of the community, the courts never show, and, to do them justice, never attempt to show. In the hundreds of pages in the reports on this subject, there is no suggestion that this rule tends to promote any good object.

\* \* \* \* \* \* \* \*

"74f. The peculiarity of this doctrine is its modern origin. It makes its first appearance in *Ide* v. *Ide,* 5 Mass. 500, in 1809, when it was founded upon a misunderstanding of the case of *Attorney-General* v. *Hall,* Fitzg. 314. No judge has ever given a rational reason for its existence, and several judges, *e. g.* Lord Truro, C., in *Watkins* v. *Williams,* 3 Macn. & G. 622, 629; Fry, J., in *Shaw* v. *Ford,* 7 Ch. D. 669, 673; Parker, C. J., in *Eaton* v. *Straw,* 18 N. H. 320, 331, have spoken of it with thinly veiled contempt. In many States, as the above cited cases show, the doctrine has become a rule of property, and is past help by the courts; but in those jurisdictions where it has not already taken root, it would seem to deserve consideration whether this pseudo-archaic and vexatious doctrine should be allowed to establish itself. See on this subject a valuable note by Edward Brooks, Jr., Esq., to the case of *Fisher* v. *Wister,* 32 Am. L. Reg. (N. S.) 1035."

■ There can be no question that the General Assembly intended by the act of 1908 to abrogate the rule of *May* v. *Joynes* and make valid the limitation over where property is explicitly granted, devised or bequeathed to a person for his life with power to dispose of the property, with a gift over to another of so much thereof as shall not be disposed of by the first taker.

Even if it be assumed that there is any reason of public policy to sustain a rule that where property is given "to A for life with the full power to dispose thereof" a gift over of so much thereof as A shall not dispose of is void, where the law permits the limitation over in such a grant or devise, there is no reason based upon considerations of public policy for preserving the rule that such a limitation over is void where the property is given "to A in fee simple" or "to A with full power to dispose thereof." This is manifest, because the same purpose can be effectuated and the same result obtained by making the grant or devise "to A for life" with full power to dispose of the property, with a gift over of so much thereof as he shall not dispose of, as by making the grant or devise "to A in fee simple" with a gift over of so much thereof as he shall not dispose of. Where such a limitation over after a life estate is valid under the law, a rule holding such a limitation void after a grant "to A in fee simple," promotes no good purpose, and is simply a trap for the grantor or testator who is not learned in the technicalities of the law. Gray, Restraints on Alienation, section 74d, section 74e; 1 Tiffany on Real Prop. p. 572.

In *Christian* v. *Wilson,* 153 Va. 614, 627, 151 S. E. 300, in commenting upon section 5147, Code Va. 1919, this court speaking through Mr. Justice Holt, says that section is a remedial statute and should be liberally construed. What is there said with reference to section 5147 is just as applicable to the act of 1908.

Our conclusion is that the act of 1908 means that where *any estate* in property, real or personal, is granted, devised or bequeathed to a grantee, devisee or legatee, with the full and absolute power to dispose of the property, but with a grant or gift over of so much of the property as shall not be disposed of by the first taker during his lifetime, the limitation over shall be valid, and so much of the property as shall not be absolutely disposed of by the first taker shall pass as directed by the grantor or testator. It applies as well where a devise of property

is made "to A to have in fee simple" with a gift over to B of so much thereof as shall not have been disposed of by A, as it does to a devise of property "to A for life with the full power to dispose thereof" with a gift over to B of so much thereof as shall not be disposed of by A.

Under the decisions of this court the gift over to Verna E. Southworth would not have been valid had the testator died prior to the date upon which the act of 1908 became effective, June 26, 1908. Nor would it have been valid had the testator died after the repeal of the act of 1908 by the enactment of the Code of 1919, and the substitution therein of section 5147 in the place of the act of 1908. But it was rendered valid by the act of 1908, which was in effect when the testator died; and notwithstanding the repeal of the act of 1908 and the fact that the gift over did not vest in possession until after it had been repealed, it remains valid and enforceable. Whether it be considered as a vested remainder, contingent remainder, or an executory devise, it is "a right accrued" to Verna E. Southworth under the repealed act of 1908, which is expressly saved to her by the provisions of sections 6 and 6569 of the Code of 1919. See in this connection *Virginia & West Va. Coal Co.* v. *Charles* (D. C.) 251 F. 83 (affirmed 254 F. 379, 165 C. C. A. 599, writ of error allowed 255 F. 992, 167 C. C. A. 671, and dismissed 252 U. S. 569, 40 S. Ct. 345, 64 L. Ed. 720).

The decree of the Chancery Court of the city of Richmond will be reversed, and a decree here entered adjudging and decreeing that, upon the death of Louisa Marshall, the widow of Benjamin F. Marshall, Verna E. Southworth became and was entitled under the will of Benjamin F. Marshall to a fee simple estate in possession in all the real estate of which he died seized and possessed, which had not been disposed of by Louisa Marshall.

*Reversed.*

CAMPBELL, C. J., concurs in conclusion.

GREGORY, J., concurs in results.